CLARK, A MINOR, ET AL., *v.* BOARD OF EDUCATION, HAMILTON
LOCAL SCHOOL DISTRICT ET AL.

(No. 77CV-03-1073—Decided April 19, 1977.)

Court of Common Pleas of Franklin County.

*Mr. Paul V. Pavlic,* for plaintiff.
*Mr. William B. Shimp,* assistant prosecuting attorney,
for defendants.

### Standing of the Parties.

FAIS, J.  Plaintiff, Kimberly Clark, a minor 15 years of
age, brings this action by and through her next friend,
Mary N. Clark, her mother.  Counsel for both parties
agreed to submit a statement of facts in writing, which
eliminated the necessity of calling witnesses to establish
the claims of both parties.

The parties could not agree upon a statement of stipu-
lated facts, and therefore, it was agreed that each party
would submit its separate statement to the court.  Each
party's statement is set forth in this opinion.  The court
follows this procedure inasmuch as there is no transcript
or record upon which the court can rely in making its
decision.

Plaintiff's complaint invokes the equity jurisdiction of
the court by its allegations and its claim for relief under
Civ. R. 65, entitled, "Injunctions." Specifically, plaintiff
requests a preliminary injunction under Civ. R. 65(B), and
that the injunction, if granted, be made permanent upon a
hearing on the merits.

Plaintiff says that she has no adequate remedy at law and that plaintiff, Kimberly Clark, will sustain irreparable injury if the injunctive relief is not granted.

Defendants are the two school administrators and the members of the Board of Education of Hamilton Local School District, who are designated and entrusted to manage, control and administer the rules, regulations, policies and functions of the school district in accordance with the laws of the state of Ohio.

### Standing of the Court.

To exercise its equity jurisdiction, a court will apply settled rules to unusual situations, and it is recognized that peculiar and extraordinary cases arise in our complex society. In such cases the customary forms of ordinary law are often not adequate, and the fiber of legal thought necessarily must be woven from equitable principles. Rules of equity vary and change, for its rules are said to regard substance and intent rather than form.

But, this does not mean that there are no settled rules in equity, and the court can be expected to shape its decree in such a manner and by making such findings as to signify the just and the unjust, thus determining the standing of the parties with relation to the claim for relief. It has been said that "equity regards as done that which ought to be done."

The court of equity is a court of conscience, which "lights its own pathway, blazes its own trail, [and] paves its own highway." 27 American Jurisprudence 2d 518, Equity, Section 2. Equity does not create rights, but rather the court may, using its powers of equity, determine the rights of parties, and having made such a determination proceed to determine whether and in what manner it is just and reasonable to enforce them.

In order that the parties to this action may reasonably understand the position of this court in this novel case, the fact that there is no precedent on the question in dispute does not deprive this court of its right to act. Furthermore, a court of equity does not, and will not, aid in the accomplishment of an act which is a violation of law or public policy.

There are many maxims which attempt to explain and define this unusual and extraordinary jurisdiction, and the standing of a court of equity is best expressed by the following:

"It is said that equity looks to the substance and not the shadow, to the spirit and not the letter; it seeks justice rather than technicality, truth rather than evasion, common sense rather than quibbling. Even more picturesquely, it is said that it has always been recognized as the right, if not always as the absolute duty, of a court clothed with equitable jurisdiction to apply its x-rays to all masks and cover and see through to the real substance.

"The meaning of the maxim or a variant thereof is that the rights of parties are not to be sacrificed to the mere letter, but that the intent or spirit of the * * * transaction will in equity at least be the paramount consideration. In applying the maxim, technicalities will be disregarded."

An equity court is duty bound to protect the rights of both parties, and he who seeks equity must do equity. To accomplish this result, a full opportunity has been given to all parties to have their causes presented in the pleadings and the proof. Courts do not act arbitrarily in determining what the equities of the parties are. The plaintiff must proceed on her own theory, and the defendants are entitled to defeat the claim for relief by showing that the plaintiff has no right to claim, or be granted, the relief sought.

This is a description of the major scope of authority, the latitudes of discretion employed, and the basic ground rules that this court of equity has taken in deciding this case.

*Plaintiff's Statement of Facts.*

1. Kimberly Clark is a high school student enrolled at Hamilton Township High School.

2. Kimberly is currently enrolled and is completing a course in American History at Hamilton Township High School and is also currently taking a course in American Government through private tutoring.

3. Permission for completion of the American Govern-

ment course by private tutoring has been approved by the principal of Hamilton Township School and is within state's standards for credits for high school courses. After successful completion of the American History course, the American Government course, and the remaining courses being taken by Kimberly at Hamilton Township High School, she will have satisfied all requirements for receiving a diploma from Hamilton Township High School, and will have at least seventeen and one-half (17 ½) units of credit and will have satisfied all minimum quantitative requirements as specified by the state of Ohio, Department of Education, and the Hamilton Local School District.

4. Kimberly Clark is in process of satisfactorily completing the American Government course and her private tutor indicates that she probably will receive an "A" for that course.

5. Assuming successful completion of the pending course of study, although she then would have satisfied all requirements for receiving a diploma, she is considered by the Hamilton Local Board of Education as an early graduate.

6. Because she is classified as an early graduate, in February of 1977, Principal of Hamilton Township High School advised Kimberly Clark that permission to participate in graduation ceremonies, where diplomas will be formally awarded, would have to be obtained from the Hamilton Local Board of Education.

7. At a regular meeting of the Board of Education scheduled on March 11, 1977, Kimberly Clark asked permission of the Board of Education to permit her to participate in the June, 1977, graduation ceremonies and to receive her diploma at those ceremonies.

8. At the regular scheduled meeting of the Board on March 11, 1977, a vote was taken and the decision announced by the Board to deny Kimberly Clark permission to participate in and to receive her diploma at the ceremonies scheduled for June 15, 1977.

9. Upon successful completion of the pending course of study, including American History and American Gov-

ernment, Kimberly Clark will be granted a diploma by the Hamilton Local Board of Education. However, such diploma will be given to Kimberly Clark in a manner and a place not yet specified to her, except that it will not be during graduation ceremonies scheduled for June 15, 1977.

10. The decision of the Hamilton Local School Board to deny Kimberly Clark permission to participate in and receive her diploma during the June 15, 1977, graduation ceremonies is based upon a Board policy which is, unwritten and which has never been formally promulgated, and which for all practical purposes, does not exist, except in some informal understanding among the Board members.

11. Kimberly Clark was not aware of any such Board policy when she began to work out a course schedule and plan for early graduation, and was first advised of the policy and the necessity for permission of the Board to participate in graduation ceremonies during February, 1977, when so advised by Eldon Malling, Principal of Hamilton Township High School.

12. No reason has ever been given to Kimberly Clark, or to the parents of Kimberly Clark by the Hamilton Local Board of Education for denying permission to participate in graduation ceremonies, except that such would be contrary to Board policy.

13. There is no written or formal School Board policy in existence or ever promulgated nor is there any formal rationale or basis written or formally promulgated which justifies having such a policy or which states any reason for having such a policy.

14. Legal action was subsequently taken against the Board of Education on behalf of Kimberly Clark for the purpose of obtaining an Order requiring the Board of Education to permit Kimberly Clark to participate in and to receive her diploma at the graduation ceremonies currently scheduled for June 15, 1977.

*Defendants' Statement of Facts*

1. The first contact by the Clark family with the Hamilton Local Schools in regard to early graduation for Kimberly was with Administrative Assistant Ed Nordin in

September or October of 1975, Kimberly's sophomore year. The point of initial discussion was the advisability of early graduation for Kimberly, with the main concern being the best interests of the pupil. Various options were discussed as alternatives to early graduation and their advisability for the pupil. Mr. Nordin investigated and received policies of other school districts. He then developed a proposed policy for Hamilton Local. Mr. Hoffman made comments and recommended it for Board action. No vote was ever taken and the formal policy has not been promulgated.

2. In February of 1976 Mrs. Clark met with Mr. Malling and Mr. Nordin and early graduation was discussed. Mr. Malling did not discourage her because he thought early graduation might benefit her as it has other students in the past, who had completed course work in summer school.

3. Mr. Malling then asked for a meeting with Mr. Nordin and Mrs. Clark, resulting in the letter of February 2nd (Exhibit E-Memorandum in Support of Motion).

4. In May of 1976 Kimberly handed in her schedule for the next school year which included American History and American Government and Mr. Malling told her personally that she could not take both at once.

5. Mrs. Clark again approached Mr. Hoffman in the fall of 1976 and asked for permission for Kimberly to take American Government during that school year. Mr. Hoffman reviewed with her the fact that American History was a junior course and American Government was a senior course, and that the request was inconsistent with school policy.

6. In late January or February of 1977, Kimberly came to see Mr. Malling. Future plans were discussed, including the possibility of returning in the fall of 1977 to complete her requirements and also attend college. Mr. Malling would contact colleges and get their early admission requirements, telling her to "think it over and tell me what you want to do." Kimberly Clark consulted Mr. Malling again regarding completion of the American Government course by private tutor during the time school was

closed for the energy crisis. This was the initial mention of private tutoring to complete the American Government course. This was seriously considered in light of the student's capabilities and her best interests.

7. Mr. Malling then conferred by telephone with Mr. Doyle Shumaker, Assistant Director of Elementary and Secondary Education, at the State Department of Education. Mr. Shumaker said private tutoring was within state standards for credit for high school courses up to two credits..

8. Permission for completion of the Amercian Government course by private tutoring was granted and a list of private tutors was provided by Mr. Malling. From that list, Linda Coffey Turner was selected as the tutor. The tutor met with Mr. Malling. He provided her with instructions and course materials, including the approved text book.

9. Although successful completion of the American Government course and the remaining courses being taken by Kimberly Clark would satisfy requirements for receiving a diploma, Mr. Malling advised Kimberly Clark that permission to participate in graduation ceremonies under these circumstances would have to be obtained from the Hamilton Local Board of Education, since she was still classified as a junior.

10. Kimberly Clark made such a request (Exhibit F—Memorandum in Support of Motion).

11. On March 11, 1977, the Board of Education took up the matter at their next regular meeting. The Board voted not to extend permission to Kimberly to participate in the June 1977 graduation ceremonies. At that time the regular school days were to go to June 16th (make-up days) and graduation was scheduled for June 8, 1977. Later at the Board meeting, however, the date of graduation was changed to June 15, 1977. Due to this, Kimberly again asked the Board to reconsider due to the change of dates. The Board did not reconsider. Suit was then filed.

### The Issues.
There are basically three issues:

(1) Does the plaintiff lose or forfeit her standing, or otherwise fail to qualify, as a member of the Senior Class of 1977 by reason of her failure to complete a course in American History (designated "a junior course") prior to September 1976?

(2) What is plaintiff's right with respect to personal participation in the formal graduation ceremonies with the members of the Senior Class of 1977?

(3) Is it within the defendants' authority to bar, prohibit or otherwise deny the plaintiff the right to participate in such graduation ceremonies for the reason stated in number 1 above?

### *Conclusions by the Court.*

It is reasonable, necessary and proper for this court, in making its final judgment, to find ways to build bridges rather than walls; to examine the facts through a telescope rather than a microscope; and, finally, in no way, to impose a boycott on academic achievement.

After a careful review of the facts, as presented by counsel, this court, makes the following conclusions:

1. There is but one Senior Class with no divisions or groups.

2. Plaintiff, Kimberly Clark, is a member of said 1977 Senior Class.

3. The rights of the members of this class *are not* separate or diverse so far as graduation ceremony is concerned.

4. There exists a community of interest among *all* the class members in senior activities—including graduation ceremonies.

5. Members of the class must be treated with, and granted, equal dignity.

6. *All* members of the class have rights which are guaranteed and protected by the Fourteenth Amendment to the United States Constitution including equal protection and personal privileges.

7. The defendants admittedly have wide latitudes to manage, control, direct, supervise and establish rules and regulations, but the defendants may not exercise its au-

thority disproportionately among the students—specifically among the members of the Senior Class.

In addition, the court finds that there was no policy, rule or regulation adopted by the defendant Board to exclude the plaintiff of her total personal participation in formal graduation ceremonies. Moreover, the defendants admit that the plaintiff is a senior, and having completed all of the requirements for graduation, she is entitled to a diploma on June 15, 1977.

To deny the plaintiff her right to be present at the formal graduation ceremony and receive her well earned diploma in the presence of the other members of her class is not justified nor supported by the evidence in this case. It is the further finding by the court that the defendants have not presented facts constituting a defense to the relief claimed by the plaintiff, and to deny the plaintiff of her relief, when she has no adequate remedy at law, would cause her irreparable personal injury.

This court approves of a statement and philosophy found in a Kansas case requesting injunctive relief to prevent a deprivation of plaintiffs' personal rights by defendants:

"* * * The situation in which they [plaintiffs] find themselves *must be viewed realistically.* Without such appraisal of facts and circumstances, courts would often have been unable, through the years, to safeguard the rights of individuals and minorities. *Mere technical arguments, which disregard realities, speak with feeble force when basic freedoms are jeopardized.*" (Emphasis added.) *Betts* v. *Easley* (1946), 161 Kan. 459, 469, 169 P. 2d 831, 839.

*Judgment and Final Order for Permanent Injunction.*

WHEREFORE, it is ordered and adjudged that:

(1) The motion of defendants for an order granting final judgment for the defendants based on the pleadings and statements of fact, be, and said motion hereby is, OVERRULED.

(2) The alternative motion of plaintiff, Kimberly Clark, for summary judgment, be, and hereby is, SUSTAINED,

for this court finds that there is no genuine issue as to any material fact raised by the pleadings, memoranda, legal arguments, or the affidavits.

(3) That defendants, separately and severally, be, and they hereby are, permanently enjoined from prohibiting plaintiff, Kimberly Clark, to participate fully and completely in the formal graduation ceremonies on June 15, 1977 with the other members of the 1977 graduating class of Hamilton Township High School, which includes but is not limited to:

(a) Her privilege and right to take her proper place in the alphabetical arrangements of the class.

(b) Her privilege and right of being seated on the stage with her classmates.

(c) Her privilege and right to wear her cap and gown.

(d) Her privilege and right to receive her diploma in the regular order.

(e) In no way shall plaintiff, Kimberly Clark, be treated or considered in any different manner than any of her classmates by the defendants in conducting the graduation ceremonies.

*Judgment accordingly.*