No. 48,033

HERBERT KNOWLES, *et al., Appellants,* v. STATE BOARD OF EDUCATION, *et al., Appellees.*

(547 P. 2d 699)

Opinion filed March 6, 1976.

*T. Richard Liebert,* of Liebert & Liebert, of Coffeyville, argued the cause, and *Frank W. Liebert,* of the same firm, was with him on the brief for appellants.

*Donald R. Hoffman,* assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, and *Clarence J. Malone,* assistant attorney general, were with him on the brief for appellees.

*Erle W. Francis,* of Topeka, argued the cause and was on the brief for the State Board of Education, its members and the Commissioner of Education, appellees.

The opinion of the court was delivered by

FROMME, J.: This is an action for a declaratory judgment that the Kansas School District Equalization Act of 1973 (K. S. A. 1974 Supp. 72-7030 *et seq.*) violates the Bill of Rights and the Constitution of the State of Kansas as well as the equal protection clause contained in the 14th Amendment to the Constitution of the United States.

This Act provides for a complicated formula by which the State Board of Education is authorized to distribute money from the state school district equalization fund to the various local school districts in the state to supplement the funds which local school districts may raise by ad valorem tax levies upon the property within their respective districts.

The action was filed on behalf of Herbert Knowles, Bill Pudden and Jean M. Barber as residents and taxpayers. Jodi Coulter, Russell Pudden and Gayla Gasper, by their respective fathers and next friends, joined in the action as plaintiffs. They are students enrolled in certain of the local school districts affected by the Act. In addition, 41 unified school districts joined as plaintiffs to lend whatever support they could. The plaintiffs sought a declaratory judgment and an order to enjoin the defendants from making further distributions under the Act.

The Attorney General, Board of Education, Director of Accounts and Reports, Treasurer, and the Commissioner of Education of the State of Kansas were joined as defendants. The attorney general consented to venue on behalf of all defendants and waived any right to trial on the issue of venue.

The issues were joined on pleadings as limited in a pre-trial order. The case was tried to the court. The record on appeal sets forth 48 stipulated exhibits together with 31 separate stipulations of fact. The case was tried in January, 1975. The parties submitted proposed findings of fact and conclusions of law. The court adopted the 50 findings of fact and seven conclusions of law proposed by the plaintiffs and declared the 1973 School District Equalization Act unconstitutional. As might be expected the judgment created statewide concern among various school boards who were relying on these state funds to meet their budget requirements.

In general it may be said the 1973 Act was struck down because the court found the distribution of state funds under the formula provided in the Act resulted in unequal benefits to certain school

districts and an unequal burden of ad valorem school taxes on tax-payers in various districts with no rational classification or basis. It was further held that this provision for state finance of schools was not sufficient to enable the plaintiffs to provide a fundamental education for the students within these respective districts on a rationally equal basis with students of other school districts within the state as required in the state constitution.

The constitutional basis for plaintiffs' attack appears in the Constitution of the State of Kansas as follows:

"The legislature shall provide for intellectual, educational, vocational and scientific improvement by establishing and maintaining public schools, educational institutions and related activities which may be organized and changed in such manner as may be provided by law." (Article 6, § 1.)

"Local public schools under the general supervision of the state board of education shall be maintained, developed and operated by locally elected boards. When authorized by law, such boards may make and carry out agreements for cooperative operation and administration of educational programs under the general supervision of the state board of education, but such agreements shall be subject to limitation, change or termination by the legislature." (Article 6, § 5.)

"The legislature shall make suitable provision for finance of the educational interests of the state. . . ." (Article 6, § 6 [b].)

"The legislature shall provide for a uniform and equal rate of assessment and taxation, . . ." (Article 11, § 1.)

In addition the plaintiffs alleged and the court found that the 1973 School District Equalization Act denies equal protection under the law to the individual plaintiffs as guaranteed by the 14th Amendment to the Constitution of the United States and Section 1 of the Kansas Bill of Rights.

However, the district judge took judicial notice that the Kansas Legislature was in session when his judgment was entered in February, 1975, and he set July 1, 1975, as the effective date for the injunction in order to give the Legislature time to correct the inequalities.

Thereafter the defendants filed a motion to open the judgment on the ground that an act was before the legislature which would materially change the operation and effect of the 1973 Act. They asked that the judgment be opened to permit the introduction of further evidence which might be relevant should the Act be materially changed.

After an extensive hearing on the defendants' motion the court held as follows:

"1. That the judgment of this Court heretofore entered February 25, 1975, be and the same is reopened for the purposes heretofore stated in the findings of this order; and

"2. That this Court does retain jurisdiction of the parties and subject matter until a final judgment is hereafter entered pursuant to the above findings and this order; and

"3. That the defendants shall have a reasonable time after the adjournment of the current 1975 Session of the Kansas Legislature to present to this Court their application for review with evidence and testimony in support thereof; and

"4. That after consideration by this Court of said application for review, this Court shall reconsider his decision in the light of any action taken in the current 1975 Session, and then enter its final judgment therein."

Thereafter the Kansas Legislature repealed and amended various sections of the 1973 School District Equalization Act effective July 1, 1975. When the 1975 law was approved by the governor the defendants filed a motion in the district court asking that they be permitted to introduce testimony and evidence as to the changes wrought by the 1975 amendments. A copy of the new bill (House Substitute for Senate Bill No. 480) was attached to the motion. Arguments were had on the motion on June 10, 1975. Although the judge took judicial notice of the 1975 amendments, he refused to hear further testimony and evidence and dismissed the case as moot. The journal entry of dismissal in pertinent part reads:

"Thereupon, the Court announced its decision that by reason of the action taken by the 1975 Kansas Legislature, the law as it existed on February 25, 1975, no longer existed; that any determination concerning the constitutionality of the old law is moot; that the constitutionality of the 1975 amendments is an entirely new matter and must be litigated in a new action; that the injunction heretofore entered in the above case should be dissolved and that the above entitled case be dismissed. Costs to defendants."

The plaintiffs appeal from this order which dissolved the injunction and dismissed the case as moot.

As might be expected the defendants did not see fit to file a cross-appeal even though their motion to open the judgment had previously been granted in order to permit them to introduce evidence and testimony in support of an application for review after the adjournment of the 1975 session of the legislature. The order dismissing the action terminated the case entirely in their favor.

The thrust of plaintiffs' appeal is twofold. They argue that no material changes were made in the provisions of the 1975 law and that we should examine the new law and enter final judgment on the record before us as justice requires. (See *Manzanares v. Bell*, 214 Kan. 589, 522 P. 2d 1291; and *Ash v. Gibson*, 146 Kan. 756,

74 P. 2d 136.) In the alternative they contend that the district court erred in holding the issues moot without an evidentiary hearing and that the order of dismissal should be reversed and the case remanded for further consideration of the constitutional questions presented in light of the new provisions of the 1975 law.

By way of background it should be noted that the support of local schools in the state of Kansas has traditionally been provided for by the legislature from two levels of government. Basic support has come from local ad valorem tax assessments levied upon the real estate and personal property within each local school district. Supplementary support of local schools has been supplied to the local school districts from sources under the authority and control of the state government.

In order to determine the first argument presented by plaintiffs-appellants it is necessary for us to consider in a general way the provisions of the 1973 School District Equalization Act in light of some of the changes effected when the 1975 amendments were passed by the legislature.

The School District Equalization Act of 1973 was an effort to provide state support for common schools on the basis of local need. Entitlement to state funds under the Act was to be determined by the State Board of Education under a statutory formula which took into consideration district wealth and the amount of the local budget per pupil as compared to the statewide median budget per pupil. Various adjustments were to be made, including one based on an adjusted valuation of the real estate in each county where the sales ratio studies had disclosed the statutory 30% of fair market value was not being used in such county.

The intricacies built into the statutory formula upon which each local district's entitlement to the fund is based are disclosed by reading the following stipulation of the parties:

"10. The method under the act by which the Plaintiff school districts' operating budgets are financed is from local *ad valorem* taxes levied by the school district and state general revenues distributed through the school district equalization fund. The local school districts adopts a budget within limitations of the School District Equalization Act, and then divides that budget by the enrollment to arrive at the budget per pupil; this district budget per pupil is divided by the 'norm budget per pupil' (a median) for the category of the particular school district in the statutory classification according to enrollment and then the result is multiplied by 1.5% to arrive at a 'local effort rate'; from the total budget there is deducted the 'local effort' of the school district; this local effort is determined by the aggregate of: (*a*) multiplying the 'local effort rate' by the 'district wealth' (as defined in the statute and including the application of the sales

ratio); plus (*b*) the district's share of intangible taxes; plus (*c*) the district share of the computed County Foundation Tax Receipts; and plus (*d*) the actual receipts from Public Law 874; after substracting the total deductions constituting the 'local effort' the balance remaining, if any, to finance the budget constitutes the entitlement for receipt of funds from the State School District Equalization Fund. The amount computed in (*a*) must be raised by the local school district in an *ad valorem* tax levy."

We have reviewed the exhibits and facts stipulated by the parties on which the original judgment of the trial court was based. It is apparent that many of these findings relate to facts and figures pertaining to how the formula operated under the 1973 Act. Extensive charts were stipulated which illustrated for the benefit of the trial court *the wide variance of amounts the plaintiff districts would receive under the 1973 Act.*

For instance the parties stipulated that in the 1973-74 school year the 309 school districts in Kansas had different operating expenditures per pupil ranging from a low in Galena (U. S. D. No. 499) of $609.23 per pupil with an enrollment of 975 pupils to a high in Kendall (U. S. D. No. 478) of $2,210.68 per pupil with an enrollment of only 85 pupils. *The stipulated charts indicated that local school district levies necessary to maintain the schools after considering state equalization monies for 1973, would vary from a low of 13.69 mill in the Moscow district* (U. S. D. No. 209) *to a high of 43.87 mill in the Beloit district* (U. S. D. No. 273). In addition it was stipulated that distribution of Equalization funds in the 1973-74 school year under the formula in the 1973 Act would vary from zero *in several of the districts to a high of 77% of the total operating budget of Elwood* (U. S. D. No. 486).

In comparing the provisions of the 1973 Act with those of the 1975 Act (K. S. A. 1975 Supp. 72-7030 *et seq.*) we find substantial changes were effected which will necessarily change the distribution of state funds and increase the ability of the local school districts to meet the financial needs of their respective districts.

We note at least six changes:

1. The limitation on increase of school district budgets was raised from 105% to 110% and in some instances to 115%. This change would result in permitting more school districts to increase their "local effort" and thereby increase their entitlement to state funds.

2. "District Wealth" was redefined to take into consideration an average of the preceding three years. This change should soften any sharp increase or decrease in either the adjusted valuation or the taxable income within a district.

3. The inclusion of intangibles tax within the computation of "local effort rate" was eliminated. The finding of the trial court that the inclusion of the intangibles tax within the computation of "local effort" was improper is no longer a legitimate finding under the 1975 amendment.

4. The formula with regard to the "local effort rate" was changed to increase the normal factor of 1.5% to 1.7%. This change should have the effect of increasing the local effort factor and increasing the local district's entitlement to state funds.

5. The income tax rebate to the local districts was increased from 10% to 15% of the amount of income tax paid by individual residents of a particular school district. This change will increase the income tax funds available to each district by one-half.

6. The 1973 Act had resulted in a general decrease in state funds payable to certain school districts as compared to the prior year. The 1975 amendments provided for an alternative entitlement which would permit a district to receive general state-aid based on either the 1972-73 entitlement under prior law or the 1975-76 entitlement under the 1975 Act, whichever was greater. There were certain limiting factors to be met however. The overall effect should be to decrease the number of school districts which will receive no general state-aid.

The constitutional challenges launched by plaintiffs against the 1973 School District Equalization Act depended in large part upon the ultimate effect of the law on the distribution of state funds to the respective districts affected by the Act. The same constitutional challenges when considered in light of the 1975 law depend in like measure upon the ultimate distributions resulting from the operation of the 1975 law.

In *San Antonio School District v. Rodriguez,* 411 U. S. 1, 36 L. Ed. 2d 16, 93 S. Ct. 1278, reh. den. 411 U. S. 959, 36 L. Ed. 2d 418, 93 S. Ct. 1919, the United States Supreme Court considered a class action on behalf of Texas school children challenging the constitutionality of the state's statutory system for financing public education under the equal protection clause of the Fourteenth Amendment. In *Rodriguez* the court noted:

" 'The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. . . . [T]he passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. . . . It has . . . been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since

the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. . . .' *Madden v. Kentucky*, 309 U. S. 83, 87-88 [84 L. Ed. 590, 60 S. Ct. 406, 125 A. L. R. 1383] (1940)." (411 U. S. pp. 40-41.)

The present case is one where the presumption of constitutionality which attends every legislative act can be overcome only by the most explicit demonstration that the method of classification and the payments made results in a hostile and oppressive discrimination against particular persons and classes. The facts and figures necessary to demonstrate such a discrimination are not available in our present record as to the 1975 Act. Therefore, we must decline to examine and decide the constitutional questions raised by the plaintiffs in light of the limited record before us.

The cases of *Manzanares v. Bell*, supra, and *Ash v. Gibson*, supra, are distinguishable from our present case. There the constitutional challenges were directed to the statutes themselves. No constitutional issues were raised which had to be resolved upon facts and figures outside the record in order to demonstrate how the particular law would result in inequalities and oppressive discrimination. Here it is the operation and effect of the law on particular persons and classes which is challenged rather than the basic theory of the law itself.

We turn now to the alternative contention of the plaintiffs that the district court erred in holding the issues raised under the 1973 Act moot and in dismissing the case.

In order to place this contention in proper perspective we first note that there are no funds presently distributable under the formula in the 1973 Act. The injunction sought by plaintiffs never became effective. The pleadings filed in the district court raised constitutional issues concerning the alleged irrational and unequal distribution of funds by the state under the 1973 Act which has since been repealed. Under the 1975 amendments all funds on hand after July 1, 1975, are to be distributed under the new law.

We return to the question. The fact that an issue has become moot does not necessarily mean that an appellate court is without jurisdiction to consider the issue on appeal. The rule as to moot questions is one of court policy, founded upon the proposition that except when under some statutory duty to do so courts do not sit for the purpose of giving opinions upon abstract propositions not involving actual controversy presented for determination. (*Moore*

*v. Smith,* 160 Kan. 167, 170, 160 P. 2d 675.) Further discussion of the rule as to mootness may be found in the more recent case of *Thompson v. Kansas City Power & Light Co.,* 208 Kan. 869, 494 P. 2d 1092, cert. den. 409 U. S. 944, 34 L. Ed. 2d 215, 93 S. Ct. 270. The rule has been applied in actions brought to obtain a declaratory judgment. (See *Bumm v. Colvin,* 181 Kan. 630, 312 P. 2d 827, and *Dick v. Drainage District No. 2,* 175 Kan. 869, 267 P. 2d 494.)

It is true that the 1973 Act which was the target of plaintiffs' action has been amended. To the extent of funds to be distributed under the 1973 Act any decision by a court on this prior law would be unavailing. However the amendments in 1975 did not change the design of the Act. The distribution of state funds to local school districts will still depend upon a complicated formula which seeks to arrive at local need. The ultimate effect of the formula depends upon the use of similar factors contained in the prior law such as district wealth, local effort, budget per pupil and sales ratio to local assessed valuations. We should not be understood to imply that these are not proper factors to be used. All we say is that the constitutional issues bearing upon plaintiffs' rights still remain unresolved. The right of persons to challenge the constitutional effect of a law upon their persons or property should not be aborted everytime the law is amended by the legislature. In some instances amendments occur almost annually with minimal impact upon the overall effect of the law. It is entirely possible that the 1976 legislature will again amend this Act.

We cannot determine in this appeal the constitutional issues raised in light of the 1975 amendments. The record contains exhibits and evidence relating only to the operation and effect of the 1973 Act. However, we do feel the plaintiffs should not be prevented from pursuing the constitutional issues raised in this action. It serves no purpose to require them to institute a new action and obtain new service of process when the parties are presently before the court.

K. S. A. 1975 Supp. 60-215 provides that a party may amend his pleading by leave of court or by written consent of the adverse party and *leave shall be freely given when justice so requires.* On request the parties should be permitted to reframe the issues in this case in light of later amendments.

The nature of this controversy is such that the rights of the parties continue to be affected by the law. It is an ongoing controversy which can be adjudicated in the present action as well, if

not better, than in a new action filed. We see no prejudice to the defendants in permitting amendments to the petition and permitting the introduction of evidence bearing upon the operation and effect of this new law.

In similar cases raising constitutional questions the federal courts have reversed orders of dismissal for mootness and remanded the cases for amendment of pleadings and further hearing. (See *Diffenderfer v. Central Baptist Church,* 404 U. S. 412, 30 L. Ed. 2d 567, 92 S. Ct. 574, and *Fusari v. Steinberg,* 419 U. S. 379, 42 L. Ed. 2d 521, 95 S. Ct. 533, reh. den. 420 U. S. 955, 43 L. Ed 2d 433, 95 S Ct. 1340.)

The order dismissing the case as moot is vacated and the case is remanded for consideration in light of any intervening changes in the Kansas School District Equalization Act.