(761 P.2d 1255)

No. 61,657

LANCE STONE, by and through his natural guardians and next friends, JERRY STONE and DEE STONE; and LANCE STONE, *Appellees,* v. KANSAS STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, INC., and BOARD OF EDUCATION OF UNIFIED SCHOOL DISTRICT 464, *Appellants.*

Appeal from Leavenworth District Court; MAURICE P. O'KEEFE, JR., judge. Opinion filed September 30, 1988.

*Randall J. Forbes* and *Kevin M. Fowler*, of Frieden & Forbes, of Topeka, for the appellant Kansas State High School Activities Association, Inc.

*Dennis L. Harris*, of Lugar, Harris, Kunce & Sheeley, of Kansas City, for the appellant Board of Education of Unified School District 464.

*Michael Gibbens*, of Tonganoxie, for the appellees.

Before ABBOTT, C.J., DAVIS and GERNON, JJ.

DAVIS, J.: The Kansas State High School Activities Association (KSHSAA) appeals from a preliminary injunction enjoining the enforcement of its eligibility rules. Following the spring 1987 semester, Lance Stone, a student at Tonganoxie High School, had been certified academically ineligible to play football during the fall 1987 semester. Although he later made up his academic deficiency, a KSHSAA rule prevented him from regaining his eligibility. Stone challenged the "no make-up" rule on due process and equal protection grounds and sought a preliminary injunction enjoining its enforcement. The district court granted the injunction, holding that the no make-up rule was unreasonable and denied Stone the due process and equal protection guaranteed by the United States Constitution. KSHSAA contends that the district court abused its discretion in granting the injunction. We agree with KSHSAA for reasons explained later in this opinion. Accordingly, we reverse.

The Kansas State High School Activities Association, Inc., (KSHSAA) is a voluntary association of Kansas high schools that oversees interscholastic activities between member schools. Its existence is authorized by K.S.A. 72-130 *et seq.* To carry out its responsibilities, KSHSAA has enacted a comprehensive set of fifty-one rules and regulations. These rules and regulations are binding on member schools and on students of member schools participating in interscholastic activies.

KSHSAA Rule 12 requires member schools to certify that each student participating in an activity is eligible. Rule 13 requires a student to pass at least five subjects of unit weight in the current semester in order to be eligible in the next semester. Rule 14 prevents a student from making up work after the end of the semester for the purpose of regaining eligibility.

During the 1986-87 school year, Lance Stone was a junior at Tonganoxie High School, a member school of KSHSAA. In the spring 1987 semester, he enrolled in six classes. He withdrew from one class, passed four classes, and failed English. On June 8, 1987, Lee Smith, the principal of Tonganoxie High School, certified to KSHSAA that Stone was ineligible for the fall 1987 semester.

While Smith was on vacation in July, Stone's parents made arrangements with Stephen McClure, the superintendent for the district, for Stone to receive 45 hours of tutoring from his English teacher so that Stone could raise his failing grade. Tutoring was necessary because Tonganoxie does not offer summer school classes. McClure did not realize when he approved the arrangement that Rule 14 prevented students from regaining eligibility by making up failing grades after the semester was over.

When Smith returned from vacation, McClure learned from him that Rule 14 would prevent Stone from regaining his eligibility and that, under standards set by the Kansas Board of Education, 60 hours of tutoring rather than 45 would be required for one unit of credit.

Stone completed the remaining 15 hours during the fall semester through a combination of tutoring and attending a night school English class. The school then noted on his transcript: "English III by arrangement-completed 10/7/87."

On September 22, 1987, Stone, his parents, and their attorney appeared before the KSHSAA executive board and requested that Stone's eligibility be restored. The executive board denied this request. The next day, Stone, his parents, their attorney, and Superintendent McClure appeared before the KSHSAA board of directors. The superintendent asked the board to amend Rule 14 so that students could regain eligibility through summer school, night school, and tutoring. The board declined to act on this request.

On October 8, 1987, Stone and his parents filed the present action seeking a declaratory judgment that Rule 14 as applied to Stone violated Stone's constitutional rights and a permanent injunction enjoining KSHSAA from declaring Stone ineligible for the fall 1987 semester. The next day, Stone sought and obtained a temporary restraining order prohibiting KSHSAA and the school district from "preventing, in any way, Lance Stone

from participating in any interscholastic or interschool activity during the Fall Semester of 1987."

At a hearing on October 23, 1987, on Stone's application for a temporary injunction, the trial court acknowledged that the rule denying eligibility to a student who did not pass five courses was desirable, but stated:

"However, it seems to the Court that, basically, that if they go ahead and cure that defect, the defect being of flunking the course, that they should be eligible for sports the next semester.

"So the rule that they cannot make it up, I think, is unreasonable and arbitrary and doesn't provide the student really the right that he should have as far as participating."

Stone also alleged in his petition that a student at Eudora High School had been declared eligible even though that student had apparently made up some failed courses in summer school before transferring to Kansas from Iowa. Unlike Kansas, Iowa permits make-up work, and this student would have been eligible had he remained in Iowa. He became eligible in Kansas under a rule providing that a transfer student may be considered eligible if he would have been eligible under similar rules in the state from which he transferred. The trial court concluded:

"I do believe that that is unequal treatment if you would allow a student from another jurisdiction who has flunked courses and is not all right academically to come into your jurisdiction and then participate in sports. I don't think that would be right.

"I think that's arbitrary and unreasonable in view of what you have in your rules for the Kansas students.

"I just don't think that that would be reasonable."

The court filed a written opinion and issued a preliminary injunction on October 23, 1987.

Mootness

Before we reach the merits of this appeal, we pause to consider the question of mootness. Stone suggests that we should dismiss this appeal as moot now that the fall 1987 semester is over. We decline to do so.

Although this appeal is, in a sense, moot since our decision will have no effect upon Stone's participation in interscholastic athletic activities in the fall 1987 semester, it does not necessarily follow that this court is without jurisdiction to determine the issues presented. As noted in *Moore v. Smith*, 160 Kan. 167, 170, 160 P.2d 675 (1945), "[t]he fact that the only relief directly

sought upon appellate review can no longer be given, owing to the expiration of a period of time involved or to other changes in circumstances following judgment, is by no means always sufficient to justify dismissal of the appeal."

In *Pauley v. Gross*, 1 Kan. App. 2d 736, 737, 574 P.2d 234 (1977) (en banc), *rev. denied* 225 Kan. 845 (1978), this court held that it could decide a moot question "where a real controversy of statewide importance and interest exists but because of the time required for adequate presentation the question cannot ordinarily be litigated at the appellate level prior to becoming moot." We cited *Smith v. Miller*, 213 Kan. 1, 514 P.2d 377 (1973), as an example of such a case.

In *Smith*, a high school student filed an action in the district court challenging the constitutionality of the statute upon which his expulsion from school had been based and further claiming that he had not been afforded due process prior to his expulsion. Upon appeal, the Supreme Court stated:

"Although in a sense the case is moot in that the school term for which appellant was expelled ended prior to its submission to this court, despite accelerated action at most stages, nonetheless the appeal will be entertained since a real controversy existed and declaratory relief was sought which included the construction, validity and constitutionality of statutes of statewide interest and importance." 213 Kan. at 5.

Because of the importance of this case to students and school systems around the state, because similar actions are likely to be filed in the future, and because it is almost inherent in the nature of such proceedings that they will be mooted by the time they reach an appellate court, we choose to decide this appeal on its merits.

### MERITS

The first question we must address is whether Stone may even challenge KSHSAA rules on due process and equal protection grounds since KSHSAA is not a government body and these guarantees protect against only government actions. We hold that he may. KSHSAA exercises substantial control over the public schools of this state and it does so as a result of its exclusive recognition by the legislature. See K.S.A. 72-130 *et seq.* When KSHSAA acts, it acts, in effect, as a government body. Accordingly, we hold that KSHSAA's rules are subject to the same constitutional scrutiny that we would apply had these rules been adopted directly by either the legislature or the school

districts of this state. See *United States v. Guest*, 383 U.S. 745, 755, 16 L. Ed. 2d 239, 86 S. Ct. 1170 (1966) (14th Amendment applies "where there has been involvement of the State or of one acting under the color of its authority"); *Gilpin v. Kansas State High School Activities Ass'n, Inc.*, 377 F. Supp. 1233 (D. Kan. 1974) (KSHSAA acts under color of state law); and *Betts v. Easley*, 161 Kan. 459, 467, 169 P.2d 831 (1946) (when labor union acts under federal law as the exclusive bargaining agent for railroad employees, it acts as a government agency and its actions are subject to constitutional scrutiny).

Due Process

At the outset, we note that participation in extracurricular school activities is not a fundamental right. Since the right to an education is not a fundamental right, *San Antonio School District v. Rodriguez*, 411 U.S. 1, 36 L. Ed. 2d 16, 93 S. Ct. 1278 (1973), it follows that the right to participate in school-related activities is also not a fundamental right. It does not, however, follow that a student's interest in participating in such activities is entirely unprotected. See *Goss v. Lopez*, 419 U.S. 565, 572-75, 42 L. Ed. 2d 725, 95 S. Ct. 729 (1975) (a student may not be deprived of his statutory right to an education without due process of law). Accordingly, we respectfully differ from those courts which hold that a student's interest in participating in extracurricular activities is "not of constitutional magnitude," *Hardy v. University Interscholastic League*, 759 F.2d 1233, 1235 (5th Cir. 1985), is not constitutionally protected, *Colorado Seminary (U of Denver) v. N.C.A.A.*, 570 F.2d 320, 321 (10th Cir. 1978), or falls "outside the protection of due process," *Walsh v. Louisiana High Sch. Athletic Ass'n*, 616 F.2d 152, 159-60 (5th Cir. 1980), *cert. denied* 449 U.S. 1124 (1981). We are unwilling to hold that an athletic association may enact and enforce, free of judicial review, rules that are arbitrary and capricious.

Since a fundamental right is not involved, the test for due process is whether the legislative means selected have a real and substantial relation to the object sought, or, whether regulation is reasonable in relation to its subject and is adopted in the interest of the community. *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 614, 576 P.2d 221 (1978).

KSHSAA has supplied several justifications for its no make-up rule. First, in KSHSAA's judgment, the rule encourages a student

to study so that he or she can pass classes when first taken. Second, the rule treats students throughout the state fairly. Many schools do not offer summer school, and not every parent can arrange or afford tutoring. In the judgment of KSHSAA, a different rule would be unfair to those students who would not have the opportunity to make up their work. A different rule would also be unfair to students who participate in extracurricular activities in the spring. Because there is only a short break between fall and spring semesters, these students, unlike the students who participate in fall extracurricular activities, would have no real opportunity to make up their work. KSHSAA also believes that the no make-up rule is not overly harsh since a student at most Kansas high schools may enroll in up to six or seven classes per semester and is required to pass only five of these classes to be eligible the next semester.

When the trial court stated that the no make-up rule was unreasonable because it did not allow a student to rectify his or her mistake, it also acknowledged that a different judge might reach a different conclusion:

"And to be perfectly frank with you, Mr. Forbes, I can see how a judge might think differently, might come to a logical conclusion the other way, but my personal feeling on logic is that . . . I agree totally with Dr. McClure's reasoning . . . ."

Although the trial court disagreed with the reasoning behind the no make-up rule, it is not the role of the trial court to substitute its own judgment for that of the KSHSAA. "Courts can no longer sit as a 'super legislature' and throw out laws they feel may be unwise, improvident or inappropriate." *Liggett*, 223 Kan. at 614. If reasonable people can differ on the theory underlying the no make-up rule, a court may not hold that the rule is invalid under a rational basis standard. As the court observed in *Art Gaines Baseball Camp, Inc. v. Houston*, 500 S.W.2d 735 (Mo. App. 1973):

"Undoubtedly this [eligibility] rule will engender strong and diverse feelings. However, this does not constitute unreasonableness or arbitrariness. The volume and competence of the testimony as to the need for and desirability of this rule show that a rational basis for the rule does exist and that its enactment by the members was justified. We cannot say that this rule is unreasonable and therefore we should not substitute our judgment for that of the Association." 500 S.W.2d at 741.

We conclude that the no make-up rule has a rational basis and

its application to Stone therefore did not violate his due process rights. We note that the many federal and state courts that have considered this question have reached the same result. See *Bailey v. Truby*, _____ W.Va. _____, 321 S.E.2d 302, 314-15 (1984) (citing numerous cases holding that similar eligibility rules do not violate a student's due process rights).

Equal Protection

The trial court also held that enforcement of the no make-up rule denied Stone the equal protection of the laws because the Iowa transfer student had been declared eligible under the out-of-state transfer rule even though he had also made up some failed courses. We hold that this did not violate Stone's equal protection rights.

Different classes of people may be treated differently under the equal protection clause of the United States Constitution. When the classification is on the basis of a suspect category, such as race or religion, equal protection requires the government to show that a compelling state interest requires the classification. However, when the classification is on any other basis, equal protection requires only that the classification have a reasonable or rational basis. *Liggett*, 223 Kan. at 616-18. Such classification need not be exact; "it is sufficient if a classification is practical and not palpably arbitrary." *Manzanares v. Bell*, 214 Kan. 589, 612, 522 P.2d 1291 (1974).

The record before us demonstrates that there is a rational basis for distinguishing between students transferring to Kansas from other states and nontransfer students. Different states have different eligibility rules. Students in other states plan their coursework in reliance upon their state's rules. These students have no knowledge of KSHSAA's rules, and often they will not learn that their families are moving until after they have finished the semester. Accordingly, KSHSAA has determined that it would be unfair to deny eligibility to students who move to Kansas when they would have been eligible had they remained in their former states.

Because the distinction between Kansas students and students moving into Kansas has a rational basis and is not based upon any suspect category, we hold that its application does not deny Stone the equal protection of the laws under the United States Constitution.

A district court is vested with a large measure of discretion in granting a temporary injunction. *Augusta Medical Complex, Inc. v. Blue Cross*, 227 Kan. 469, 473, 608 P.2d 890 (1980). However, it is an abuse of discretion for a district court to grant a temporary injunction to which the plaintiff, as a matter of law, is not entitled. 227 Kan. at 473. Enforcement of the no make-up rule did not deny Stone his due process or equal protection rights. We therefore hold that the district court abused its discretion in granting the temporary injunction because Stone, as a matter of law, was not entitled to an injunction on either due process or equal protection grounds.

The "Protective Order"

After the trial court granted the temporary injunction Stone requested, U.S.D. No. 464 requested a temporary injunction enjoining KSHSAA from imposing any sanctions or penalties on the district for complying with the injunction by allowing Stone to play football. The trial court granted the injunction the district requested. The district now argues that this injunction was properly issued. This issue, however, is not ripe for adjudication. *Knowles v. State Board of Education*, 219 Kan. 271, 278, 547 P.2d 699 (1976); *Smith v. Russ*, 184 Kan. 773, 776, 339 P.2d 286 (1959). At present there is no real controversy between the parties, only the possibility of a future controversy. Any decision now would be abstract and hypothetical.

Reversed.