No. 74,817

BROOK ROBINSON, Parent and Natural Guardian of Brook Robinson, Jr., and Brandon Robinson; and CHARLES GUNTER, Parent and Natural Guardian of Charles Gunter, Jr., and Mario Gunter, *Appellees*, v. THE KANSAS STATE HIGH SCHOOL ACTIVITIES ASSOCIATION, INC., *Appellant*.

(917 P.2d 836)

Opinion filed May 31, 1996.

*Randall J. Forbes*, of Frieden, Haynes & Forbes, of Topeka, argued the cause, and *Kevin M. Fowler*, of the same firm, was with him on the briefs for appellant.

*Ken M. Peterson*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause and *Ralph R. Brock*, of the same firm, was with him on the brief for appellees.

*Allen R. Slater, Craig T. Kenworthy*, and *Karen Zambri Schutter*, of Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, of Overland Park, were on the brief for *amicus curiae* National Federation of State High School Associations, Inc.

*George C. Bruce* and *Kathryn Gardner*, of Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., of Wichita, were on the brief for *amicus curiae* Missouri Valley Swimming, Inc.

*John P. Woolf* and *Jeffery C. Dahlgren*, of Triplett, Woolf & Garretson, LLP, of Wichita, were on the brief for *amicus curiae* U.S.A. Wrestling-Kansas, Inc.

The opinion of the court was delivered by

SIX, J.: This case addresses the rule-making authority of the Kansas State High School Activities Association, Inc. (KSHSAA). The

district court after a bench trial enjoined enforcement of all KSHSAA rules, holding the rules are void ab initio because they are the product of an unconstitutional delegation of legislative power. According to the district court, the rules violate Article 2, § 1 of the Kansas Constitution. Additional issues concern whether: (1) the plaintiffs have standing to bring this action and (2) the unconstitutional delegation issue was properly before the district court for decision.

Two fathers, each with two minor sons who play basketball, sued KSHSAA, seeking relief from four rules concerning eligibility for high school and junior high school interscholastic basketball competition. The fathers sought a declaratory judgment, quo warranto, an order of mandamus, and a permanent injunction. The district court stayed the injunction, pending appeal. Our jurisdiction is under K.S.A. 60-2101(b) (a final judgment of the district court in which a Kansas statute was held to be unconstitutional).

We reverse and hold: (1) The fathers have standing; (2) the unconstitutional delegation issue is before us for review; and (3) KSHSAA's rules are not void and unenforceable as an unconstitutional delegation or sub-delegation of legislative power.

The fathers also alleged in district court that KSHSAA acted beyond its jurisdiction in adopting the questioned rules and that the rules were arbitrary and capricious. The merits of these theories were not addressed by the district court; thus, we do not reach them on appeal.

## FACTS

Brook Robinson is the father of Brook, Jr., a freshman at Wichita Southeast High School, and Brandon, now a 7th-grader. Both boys play basketball. Charles Gunter is the father of Chuck, a senior on the varsity basketball squad at Wichita Southeast, and Mario, a freshman at the same school.

The fathers challenge the following four KSHSAA rules: Article 5, Section 1 of Rule 33 ("three players to a squad rule"); Article 4, Section 1 of Rule 33 ("anti-competitive team camp rule"); Article 1, Section 1 of Rule 22 ("outside team rule"); and Section 1 of Rule 26 ("anti-clinic and private instruction rule"). The "three-player

rule" may have been repealed, thus possibly mooting the question of its validity. (See "KSHSAA Cuts Down Restrictions," The Topeka Capital-Journal, Sunday, April 21, 1996, 15-F.)

The "anti-competitive team camp rule" prohibits basketball players from attending competitive team camps in summer or school-organized practices during spring or summer. The rule generally prohibits coaches from basketball-related contacts with their players during those times (except for a one-week team camp). Students may individually attend summer basketball camps that are not school-organized. Soccer and baseball do not have similar restrictions. The fathers desire that their sons have the freedom to attend competitive team camps in the summer, play in summer leagues with school teammates, receive summer instruction from their coaches, and have the freedom to decide what summer activities they will engage in without being penalized by KSHSAA.

The "outside team rule" prohibits a student from playing on both a school team and a non-school team during the basketball season. Mario and Brook, Jr., could not play YMCA basketball during the basketball seasons of their schools. Brandon will not be able to play YMCA and Salvation Army basketball without losing his eligibility, if he plays on a middle school team.

The "anti-clinic and private instruction rule" prohibits two or more players from receiving private instruction from non-school personnel during the basketball season. Former National Basketball Association stars have offered free clinics in the Wichita area, but this rule has prohibited Robinson's sons from attending.

KSHSAA has existed since 1910, beginning as a voluntary athletic association of some 50 high schools. It has handled rules violation cases involving interscholastic athletics since the 1920's. In 1937, it became the Activities Association and included speech and music in addition to athletics. It was first incorporated in 1956 as a nonprofit educational corporation, reorganized in 1958, under L. 1955, ch. 341, as amended by L. 1957, ch. 375, and reorganized again in 1969, in order to remain in compliance with statutory requirements. KSHSAA is currently organized under K.S.A. 1995 Supp. 72-130. At present, approximately 365 high schools (over

90% of Kansas high schools) and 400 junior high or middle schools are members of KSHSAA.

## DISCUSSION

### Standing

KSHSAA argues that the fathers do not have standing to challenge the legality of the KSHSAA rules because they are not members of the KSHSAA. KSHSAA contends that only member schools can challenge its rules. The fathers argue they have standing because the rules directly and expressly apply to their children and adversely affect the children. We note that KSHSAA does not assert a real party in interest argument to support its lack of standing claim. Robinson and Gunter sued in their own names, not in the names of their sons, who are minors. The complaints made about the KSHSAA rules concern the sons, not the fathers. The rules affect the sons' eligibility for interscholastic competition, not the fathers. At oral argument, counsel confirmed that KSHSAA raised no real party in interest objection. Counsel for the fathers said that had such an objection been raised at the district court level, he would have sought leave to amend the petition naming the sons as plaintiffs. KSHSAA has waived any objections to the fathers as the real parties in interest. See K.S.A. 60-217(a).

Our review of the district court's conclusion of law as to standing is unlimited. See *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991). Standing to sue means that a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of the controversy. *Joe Self Chevrolet, Inc. v. Board of Sedgwick County Comm'rs*, 247 Kan. 625, Syl. ¶ 1, 802 P.2d 1231 (1990).

The district court based its determination that standing existed upon application of the Declaratory Judgment Act, K.S.A. 60-1701 *et seq.* K.S.A. 60-1701 provides in part: "Courts of record within their respective jurisdictions shall have power to declare the rights, status, and other legal relations whether or not further relief is, or could be sought." K.S.A. 60-1704 provides:

"Any person having an interest under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may seek deter-

mination of any question of construction or validity arising under that enactment, document or agreement and may obtain a declaration of rights, status or other legal relations thereunder."

Plaintiffs do not claim the KSHSAA rules in question violate any of their constitutional rights. Participation in extracurricular school activities is not a fundamental right. *Stone v. Kansas State High School Activities Ass'n, Inc.*, 13 Kan. App. 2d 71, 76, 761 P.2d 1255 (1988). The only constitutional issue in this case involves the non-delegation doctrine.

Cases in other jurisdictions show that judicial review of enforcement of state high school activities associations' rules can be sought by aggrieved students under an "arbitrary and capricious" standard. See *Ind. High School Athletic Ass'n v. Avant*, 650 N.E.2d 1164, 1167-68 (Ind. App. 1995); *Gerard v. State High School Athletic Ass'n*, 210 App. Div. 2d 938, 939, 620 N.Y.S.2d 670 (1994); and *Hebert v. Ventetuolo*, 480 A.2d 403, 407 (R.I. 1984).

Other courts have allowed judicial review of a high school activities association's regulations because of the association's performance of a quasi-governmental function and support from public funds. See *Crandall v. N.D. High School Activities Ass'n*, 261 N.W.2d 921, 925 (N.D. 1978).

We reason that the fathers have the minimal standing required under K.S.A. 60-1701 *et seq.*, although they raise no constitutional rights claims and their sons have not yet done anything that would result in loss of eligibility under the challenged rules. The fathers complain that their sons' non-school activities are being curtailed by the rules in question. The fathers seek to void the rules so their sons can participate in certain non-school activities previously avoided for fear of losing eligibility. The fathers allege a stake in an actual controversy to that extent. Again, we emphasize no objection to the fathers as the real parties in interest has been asserted.

## Was the Constitutional Issue Raised?

KSHSAA contends that the fathers did not raise the unconstitutional delegation issue until the day of trial and consequently KSHSAA had no meaningful opportunity to be heard. KSHSAA

also reasons that we should apply a de novo standard of review in our analysis of whether the delegation issue has been raised. The fathers respond that the district court's decision on either whether the issue was raised or to allow an amendment of the pleadings should be reviewed under an abuse of discretion standard, citing *Fusaro v. First Family Mtg. Corp.*, 257 Kan. 794, 897 P.2d 123 (1995). In *Fusaro,* we applied an abuse of discretion standard to the district court's decision allowing Fusaro to amend his petition to claim punitive damages. 257 Kan. at 804. The situation in this case is similar to a ruling on a motion to amend the pleadings. The district court impliedly granted such a motion by deciding the constitutional issue. The abuse of discretion standard of review is appropriate.

The fathers did not specifically allege an unconstitutional delegation of legislative power in the petition, initially assuming KSHSAA should be treated as a state agency. The pretrial statement did not identify the unconstitutional delegation issue with any clarity. However, the fathers' trial brief did. Counsel for KSHSAA specifically addressed the unconstitutional delegation issue on the merits in his closing statement at trial, without arguing that the issue was not properly before the court. We find no abuse of discretion in the district court's consideration of the unconstitutional delegation issue; thus, the issue is ripe for resolution.

## Has There Been an Unconstitutional Delegation to KSHSAA?

Our review of the district court's conclusion of law that KSHSAA's rules are void ab initio as an unconstitutional delegation of legislative power is unlimited. See *Gillespie,* 250 Kan. 123, Syl. ¶ 2.

Legislative power is the power to make, amend, or repeal laws. *State ex rel. Stephan v. Kansas House of Representatives,* 236 Kan 45, 59, 687 P.2d 622 (1984). Article 2, § 1 of the Kansas Constitution provides: "The legislative power of this state shall be vested in a house of representatives and senate." The delegation of legislative power to a private group or association is constitutionally impermissible. *Sedlak v. Dick,* 256 Kan. 779, Syl. ¶ 1, 887 P.2d 1119 (1995).

In determining whether an unconstitutional delegation of legislative power has taken place, the first question is, has there been a delegation? KSHSAA, or its predecessors, has been adopting and interpreting rules for interscholastic high school sports competition among member schools since the 1920's. KSHSAA did not come under any statutory directives until 1955. The legislature required "any organization" whose purpose is the regulation of school activities: (1) to incorporate and file annual reports with the state department of public instruction, (2) select its governing board according to statute, and (3) to provide for an appeal process for students "aggrieved by any rulings or decision." School districts were prohibited from paying dues to KSHSAA unless KSHSAA complied with the reporting requirements and governing board selection criteria. L. 1955, ch. 341. The 1955 legislation has been amended six times, resulting in the current version of K.S.A. 72-130 *et seq.* (L. 1993, ch. 245, §§ 1-4; L. 1992, ch. 262, § 7; L. 1984, ch. 261, § 2; L. 1977, ch. 239, §§ 1-7; L. 1969, ch. 311, §§ 1-7; L. 1957, ch. 375, §§ 1-6.)

The 1957 amendment applied to

"[a]ny organization with a majority of the high schools of the state as members and whose purpose is the state-wide regulation, supervision, promotion or development of any of the activities referred to in this act and in which any public school of this state may participate directly or indirectly." L. 1957, ch. 375, § 1.

The only organization fitting that criteria was and is KSHSAA.

The 1957 amendment added the requirement that KSHSAA

"adopt such bylaws, rules and regulations governing its organization, membership and activities in conformity with the provisions of [this] act, and file a copy of same with the state department of public instruction. Any additions, alterations or modifications of such bylaws, rules and regulations shall first be submitted to the state superintendent of public instruction for his approval or disapproval. If disapproved by said superintendent, it may be submitted to the state board of education which shall have the power to approve or disapprove the same." L. 1957, ch. 375, § 1(4).

The subject of education was addressed by the original framers in Article 6 of the Kansas Constitution adopted in 1861 and "designed to provide for the establishment of a school system during pioneer times." Kansas Legislative Council, The Education

Amendment to the Kansas Constitution, p. 4 (Publication No. 256, December 1965). Article 6 underwent a comprehensive constitutional amendment in 1966.

One of the main purposes of the 1966 amendment was to place responsibility for all elementary and secondary public education in the state board of education. The Education Amendment to the Kansas Constitution, p. 7.

As part of the 1966 amendment drafting process, the House Concurrent Resolution No. 537 authorized the Legislative Council to produce the report entitled, "The Education Amendment to the Kansas Constitution." The resolution provided:

"[T]he Kansas legislative council is hereby directed to make a study of the scope, function and organization of the state in supervising education to comply with the constitutional requirement of a uniform system of public schools, and in particular correlating supervision of programs under the state superintendent of public instruction, the state board of education, the *Kansas state high school activities association* and the state board for vocational education." H. Con. Res. 537. (Emphasis added.)

The Legislative Council report states the following concerning KSHSAA:

" 'Related activities' are those activities which affect or impinge on school programs and educational functions, and which may be conducted by agencies outside the regular school system.

"High School Activities. One example of related activities is the area now supervised by the Kansas State High School Activities Association. It was first a voluntary organization to set and enforce policies for most forms of extra-curricular and inter-scholastic competition (e.g., football, basketball, music, debate, track, etc.), but in 1955 the legislature gave it statutory recognition. In carrying out its duties, the Association is essentially an independent unit. The State Superintendent may veto changes in its rules and regulations, but he has no authority to initiate new policies. . . .

"Increasingly, extra curricular activities are a major part of any well-balanced school program. Because such activities place demands on students, they have a direct effect on programs offered during regular class hours. The Association would probably continue its present responsibilities and form of organization, but its actions would be under the general supervision of the new State Board of Education." The Education Amendment to the Kansas Constitution, pp. 15-16.

The report shows that the proposed constitutional amendment was not intended by the drafters to change the responsibilities of

KSHSAA, but only to change the supervising entity from the State Superintendent of Public Instruction to the State Board of Education.

The 1969 amendment to K.S.A. 72-130 *et seq.* conformed the statutory language with the 1966 constitutional amendment to Article 6. L. 1969, ch. 311. The statutory amendment required KSHSAA to

"adopt amendments to its articles of incorporation and bylaws in conformity with the provisions of this act, and submit the same to the state board of education for its approval or disapproval. Also, any additions, alterations or modifications of such articles or bylaws made at any time shall first be submitted to the state board of education for its approval or disapproval. If any such articles of incorporation, bylaws or any amendment, addition or alteration thereto is disapproved by the state board of education, the same shall not be adopted." L. 1969, ch. 311, § 1(3).

The statutory amendment eliminated the requirement imposed in 1957 which required KSHSAA to submit its rules and regulations or amendments to the State Superintendent of Public Instruction for approval. Only articles of incorporation and bylaws or amendments would need to be submitted to the state board of education for approval.

After a study of KSHSAA in 1976 by the Special Committee on Education, as shown in the committee's Report on Kansas Legislative Interim Studies to the 1977 Legislature, Part I, p. 11-1 (December 1976), K.S.A. 72-130 *et seq.* was again amended. L. 1977, ch. 239. The Committee recommended statutory revisions to the appeals board provisions, that KSHSAA comply with the open meetings law, and certain changes

"designed to conform certain provisions of the statutes and KSHSAA bylaws, as well as to clarify existing provisions of the law.

"For example, the role and function of the Board of Directors, Executive Board, and Appeal Board are specified in the bill. This results in no departure from present practice as set forth in KSHSAA bylaws." Interim Studies Report, p. 11-7.

The 1977 changes to K.S.A. 72-130 *et seq.* followed the recommendations of the committee. L. 1977, ch. 239. A provision added by the amendment required that the association "[b]e governed by a board of directors which shall exercise the legislative authority of the association and shall establish policy for said association." Ac-

cording to the Interim Studies Report, this provision was not intended to result in any departure from the practice set forth in the existing KSHSAA bylaws. It was not intended to confer any "legislative authority" on KSHSAA that it did not already have from its member schools.

No statutory provision has ever expressly delegated rule-making authority to KSHSAA. However, since L. 1955, ch. 341, the legislature has dictated the composition of KSHSAA's governing board and has prescribed the appeals procedures for rulings and decisions of KSHSAA. Since L. 1957, ch. 375, the legislature has required KSHSAA's bylaws or changes to be approved by the supervising state entity (initially the State Superintendent of Public Instruction and later the State Board of Education). Since L. 1969, ch. 311, § 1(3), KSHSAA has also been required to conform its articles of incorporation to K.S.A. 72-130 and submit any changes to the State Board of Education for approval.

KSHSAA cites cases from other jurisdictions in which courts have rejected arguments of unconstitutional delegations of power from legislatures or school boards in lawsuits challenging enforcement of state high school activities association rules. Cases from other jurisdictions must be viewed with caution, because the constitutional and legislative provisions in those jurisdictions differ from those in Kansas.

KSHSAA adopts its own rules concerning interscholastic activities, which the member schools agree to follow. Students have a choice of whether to follow the rules. If the student wants to participate in the interscholastic activities, he or she must follow the rules. Otherwise, the rules can be ignored.

KSHSAA's rules are not the result of an unconstitutional delegation of legislative authority. KSHSAA had been exercising rule-making authority over its members in interscholastic sports for decades before the legislature saw fit to impose any statutory requirements on KSHSAA.

## The District Court's Decision

In reaching the determination that an unconstitutional delegation of legislative power had taken place, the district court first

concluded that KSHSAA is not a voluntary association. In arriving at that conclusion, the district court relied on the contract doctrine of coercion or duress as stated in *Milling Co. v. Gas & Electric Co.*, 115 Kan. 712, 225 Pac. 86 (1924); *Williamson v. Ackerman*, 77 Kan. 502, 94 Pac. 807 (1908); and *Delano v. Kitch*, 663 F.2d 990 (10th Cir. 1981). The district court also compared KSHSAA's situation to *Bunger v. Iowa High School Athletic Association*, 197 N.W.2d 555 (Iowa 1972), noting that over 90% of the schools in Kansas belonged to the association. Although *Bunger* was not relied on, the district court concluded that "withdraw[al] from the Association as a means of exercising some form of voluntariness would be a meaningless act."

The voluntariness issue goes to the heart of the question of whether KSHSAA's rules are considered a matter of contract between its members or a delegated legislative function. The district court reasoned that the rules of KSHSAA should not be considered the rules of the member schools because membership in KSHSAA was not voluntary. Member schools had no choice on following the rules, even if they had voted against them.

The relationship of a voluntary association with its members is governed by contract law. *Cunningham v. Independent Soap & Chemical Workers*, 207 Kan. 812, 818, 486 P.2d 1316, *cert. denied* 404 U.S. 985 (1971).

KSHSAA has been characterized as a voluntary organization. See *Gilpin v. Kansas State High School Activities Ass'n, Inc.*, 377 F. Supp. 1233, 1237 (D. Kan. 1973) (KSHSAA "is a voluntary non-profit corporation."); *Stone*, 13 Kan. App. 2d at 72 (KSHSAA "is a voluntary association of Kansas high schools that oversees inter-scholastic activities between member schools."). Therefore, according to KSHSAA, its rules are a matter of contract and not the result of any delegation of power from the legislature. We agree.

Section 1, Article 1, of the bylaws of KSHSAA provides that any accredited public or private high school may join the association by its principal subscribing to the rules of the association and the payment of annual dues. Member schools can seek to have a rule rescinded or changed through the board of directors. KSHSAA Rules & Regulations Governing Grades Seven Through Twelve,

Amendments, KSHSAA Handbook (1994-95 ed.) ("The rules . . . may be amended at any regular or called meeting of the Board of Directors by a majority vote of those present.").

Nothing compels a high school to join KSHSAA or refrain from withdrawing its membership, if the school is willing to accept the consequences, however unpalatable. Schools are not required to have an interscholastic athletic program. We question the comparison of the KSHSAA—school relationship to the "coercive contract" situations in *Milling Co.*, 115 Kan. 712; *Delano*, 663 F.2d 990; and *Williamson*, 77 Kan. 502.

*Milling Co.*, 115 Kan. 712, concerned an action to recover money paid under duress. Just before the United States' involvement in World War I, a milling company and an electric power company negotiated a contract to supply electricity at a certain rate. During the war, the power company's costs increased dramatically. The power company requested more than the contract amount from the milling company, stating it could not continue service otherwise. The milling company paid under protest. We determined that such overpayments were made under duress and could later be recovered. "To constitute duress making a payment of money involuntary, there must be unlawful coercion, destroying free agency to pay or not to pay, according to one's own will." 115 Kan. 712, Syl. ¶ 1. "It is only when in an emergency for which he is not responsible, a person is compelled to meet an illegal exaction to protect his business interest, that he may recover the payment." 115 Kan. 712, Syl. ¶ 2.

The facts and holding in *Williamson*, 77 Kan. 502, Syl. ¶ 1, are stated as follows:

"A contract, in order to be valid and binding, must be the result of the free assent of the parties making it; and where a father is coerced into executing a mortgage to secure the payment of a defalcation of his son, by threats of the arrest and prosecution of the son for embezzlement if such security is not given, the mortgage may be avoided on the ground of duress."

*Delano*, 663 F.2d 990, involved a suit by former minority shareholders against the director, officer, and lawyer and the president, alleging breach of fiduciary duties concerning the sale of the corporation. Part of the suit involved a claim that Kitch, the director,

officer, and lawyer for the corporation, had exacted a finder's fee without the plaintiff shareholders' consent. Kitch argued that plaintiffs ratified his actions by selling their stock. The United States Court of Appeals, affirming the verdict for the shareholders, stated:

"Ratification is not effective in favor of the fiduciary and against the beneficiary if the beneficiary must act to protect his or her own interests or acts under duress imposed by the fiduciary. [Citations omitted.] Plaintiffs acted under duress and to protect their interests. They learned of the contract after a majority had already agreed to it and when they had only ten days to decide whether to participate." 663 F.2d at 999.

*Milling Co., Williamson,* and *Delano* are distinguishable. KSHSAA has taken neither illegal coercive action nor breached a fiduciary relationship. There is no evidence in the record that any member school considers its membership coerced.

The district court compared KSHSAA's situation to *Bunger v. Iowa High School Athletic Association,* 197 N.W.2d 555. In *Bunger,* the parents of a high school football player ruled ineligible sued the Iowa High School Athletic Association (ISHAA) questioning the validity of one of ISHAA's good conduct rules which related to vehicles and alcohol. The Iowa Supreme Court determined that IHSAA did not have authority to adopt the rule. The court noted that the legislature had statutorily delegated rule-making authority to the local school boards, but concluded that the school boards of IHSAA member schools had improperly sub-delegated this authority to IHSAA. 197 N.W.2d at 563. An argument IHSAA raised was that the rules were actually rules of each member school board because each board agrees to abide by IHSAA's rules when it joins the association. 197 N.W.2d at 561. The *Bunger* court said:

"We think this contention is inconsonant with the realities of the situation. The rules are actually association rules. A rule is initially adopted by majority vote of the association members. Bearing in mind that a school board cannot re-delegate its rule-making power, how can we say that a school which votes against a proposed rule has itself promulgated that rule? Again, a school which joins IHSAA after a number of rules have been adopted has no choice as to the rules it will accept. It must take them all and abdicate its nondelegable responsibility to select the rules it wishes to have. Then what about a member school which becomes dissatisfied with a rule? It has no power to repeal the rule. To say the school can withdraw

from IHSAA is no answer. If it leaves IHSAA voluntarily, or involuntarily for violating the rule, its boys' interscholastic athletic program is at an end . . . ." 197 N.W.2d at 561.

We suggest that the *Bunger* court's reasoning is even more inconsonant with the realities of the situation. How can schools organize themselves for interscholastic competition unless they all agree to play by the same rules? How can an individual school board adopt its own rules for interscholastic competition and hope to find other schools willing to compete, if each school has different rules? How is the sport, debate, or music event played out, if each team or group brings along not only its own ball, debate topics, or instruments, but also its own rules? The voluntary aspect of agreeing to abide by KSHSAA's rules is the desire to become involved in interscholastic competition. The nature of interscholastic competition demands that there be a set of rules all competing schools are willing to abide by. It should be understood that a school wanting to compete in sports or other activities with other schools will agree to abide by the rules they all agree on—whether each school may like or dislike a particular rule.

The fact that almost all high schools in Kansas may belong to KSHSAA does not necessarily suggest that membership is involuntary. It may simply reflect the schools' universal desire for interscholastic competition. The fact that all member schools must agree to obey the rules governing interscholastic competition, whether or not they individually agree with those rules, likewise does not establish involuntariness. The member schools' desire that all schools play by the same rules overrides each school's rules preferences, so that interscholastic competition can take place.

The Iowa constitutional and statutory provisions applicable to *Bunger* do not parallel those in Kansas. See 197 N.W.2d at 563. There are no statutory provisions in Kansas that expressly delegate rule making, or even rule approval, authority for interscholastic activities to the State Board of Education, local school boards, or KSHSAA. KSHSAA has always exercised rule-making authority—with or without any statutory sanction.

## Reliance on Nondelegation Doctrine Cases

In concluding that KSHSAA's rules were the result of an unconstitutional delegation of legislative power, the district court relied on three of our cases which applied the nondelegation doctrine: *Sedlak*, 256 Kan. 779; *Gumbhir v. Kansas State Board of Pharmacy*, 228 Kan. 579, 618 P.2d 837 (1980); and *State v. Crawford*, 104 Kan. 141, 177 Pac. 360 (1919). The fathers argue that even if no express delegation has been made to KSHSAA, the legislature has delegated by default by allowing KSHSAA to make the rules. As *amicus* National Federation emphasizes, a statutory source of the delegation must exist. We agree. The fathers' delegation by default assertion is not persuasive. The district court viewed K.S.A. 1995 Supp. 72-130 as the statutory source of the delegation. All of the nondelegation doctrine cases relied upon by the district court had statutory sources of delegation.

In *Crawford*, defendant theater operators were charged with misdemeanor violation of the fire prevention act, which required that all electric wiring be in accordance with the national electric code. Defendants challenged the statute as an unconstitutional delegation of legislative power to the outside organizations that adopted the national electric code. We agreed, stating:

"If the legislature desires to adopt a rule of the national electrical code as a law of this state, it should copy that rule and give it a title and an enacting clause and pass it through the senate and the house of representatives by a constitutional majority and give the governor a chance to approve or veto it, and then hand it over to the secretary of state for publication." 104 Kan. at 144.

In *Gumbhir*, the challenged statute (K.S.A. 1979 Supp. 65-1631[a]) required an undergraduate degree in pharmacy from a school accredited by the American Council on Pharmaceutical Education (ACOPE) before an applicant could take the examination to become a registered pharmacist in Kansas. Only pharmacy schools in the United States were on ACOPE's accreditation list. Mr. Gumbhir, who received his undergraduate pharmacy degree in India, was refused application for the examination, and he sued. ACOPE was described as "a nongovernmental agency organized

exclusively for educational and other nonprofit purposes." 228 Kan. at 580. We determined that the subject statute was "an unlawful delegation of legislative authority to a nongovernmental association." 228 Kan. at 587.

In *Sedlak*, the constitutionality of certain provisions in the Workers Compensation Act was challenged. Those provisions established the Workers Compensation Board and provided that board members would be selected by one representative of the Kansas Chamber of Commerce and Industry and one representative of the Kansas AFL-CIO. We noted that the "nature of the delegated power . . . is appointive rather than regulatory." 256 Kan. at 801. Acknowledging that the "power of nomination may be exercised by a private organization," but relying on *Gumbhir*, we determined that "the challenged statute is an unlawful delegation of legislative authority to a private entity." 256 Kan. at 802-03.

*Crawford*, *Gumbhir* and *Sedlak* are distinguishable. K.S.A. 72-130 *et seq.* makes no express delegation of any rule-making power concerning interscholastic activities (particularly regarding eligibility) to KSHSAA, the State Board of Education, or to local school boards. K.S.A. 1995 Supp. 72-130(a)(3) provides that the board of directors "shall exercise the legislative authority of the association." However, the reference is to KSHSAA's inherent legislative authority to govern the interscholastic activities of its member schools—not legislative authority delegated from the state legislature. K.S.A. 1995 Supp. 72-130(a)(4) gives the State Board of Education authority to approve amendments to KSHSAA's articles of incorporation or bylaws, but it says nothing as to eligibility rules. K.S.A. 1995 Supp. 72-130(a) lists several requirements that an association fitting the prescribed qualifications must comply with, but it does not direct KSHSAA to promulgate eligibility rules. KSHSAA's rules cover a narrow spectrum: interscholastic competition among its member schools. KSHSAA has been making these rules without any delegation of authority for more than the past 70 years. K.S.A. 1995 Supp. 72-130 prescribes the mechanics that KSHSAA must follow in selecting its governing body, so the rule-making process is representative.

The district court also determined that the local school boards had sub-delegated power to KSHSAA through member schools' participation in KSHSAA. If there has been no statutory delegation of eligibility rule-making authority from the legislature to local school boards, there can be no sub-delegation of such authority from the schools boards to KSHSAA.

## Right for the Wrong Reason

The district court in deciding the case did not reach the fathers' allegations concerning the validity of the rules themselves. The fathers invite us to address their claim that KSHSAA lacks jurisdiction to adopt the rules as an alternative reason for affirming the district court, citing *Bank of Kansas v. Davison*, 253 Kan. 780, 792, 861 P.2d 806 (1993), *Admire Bank & Trust v. City of Emporia*, 250 Kan. 688, Syl. ¶ 2, 829 P.2d 578 (1992), and *Prairie State Bank v. Hoefgen*, 245 Kan. 236, Syl. ¶ 3, 777 P.2d 811 (1989) ("The reasons given by the district court for its decision are immaterial so long as its ruling was correct for any reason."). The "right for the wrong reason" rule is applicable when we affirm the district court. Here we reverse. We decline the invitation.

## Conclusion

The fathers have met the minimal requirements for standing. The unconstitutional delegation issue was sufficiently raised at a trial to place it before us on appeal. KSHSAA is a nonprofit corporation consisting of voluntary members. KSHSAA's rules are adopted by its members, through its board of directors, and each member school agrees to obey those rules. We find no unconstitutional delegation or sub-delegation under K.S.A. 72-130 *et seq.* of legislative power violating Article 2, § 1 of the Kansas Constitution.

The fathers' remaining theories in the case are: (1) KSHSAA lacks jurisdiction to adopt the questioned rules because the rules attempt to regulate non-school activities, and (2) the subject rules are arbitrary, capricious, and unreasonable. The district court will need to consider the merits of these two theories on remand.

Reversed and remanded.

ABBOTT, J., not participating.

TERRY L. BULLOCK, District Judge, assigned.