Charles C. Smith, Jr., Cameron, Guy Homer Carriker, Nederland, for respondents.

PER CURIAM.

In this case the Court of Civil Appeals, 248 S.W.2d 1015, 1016, has sustained a point of error which presents the question that a material fact finding of the court was "contrary to a preponderance of the evidence". There was no point presenting the question of no evidence. Instead of remanding the cause to the trial court, the Court of Civil Appeals rendered judgment contrary to the finding. By so doing it fell into conflict with the opinion of this court in Childre v. Casstevens, 148 Tex. 297, 224 S.W.2d 461, and cases there cited.

By Rule 483, TRCP, this court is authorized to reverse and remand a case on the application for writ of error without the necessity of granting the writ and hearing the case when the decision of the Court of Civil Appeals is in conflict with a previous opinion of this court. Cases in which we have exercised that authority are collated in Railroad Commission of Texas v. Roberdeau, Tex.Sup., 242 S.W.2d 881. This is a proper case for its exercise, and it is therefore ordered that the judgment of the Court of Civil Appeals, in so far as it rendered judgment against petitioners, be reversed, and the cause remanded to the trial court.

## UNIVERSITY INTERSCHOLASTIC LEAGUE v. MIDWESTERN UNIVERSITY et al.

### No. 15374.

Court of Civil Appeals of Texas.
Fort Worth.

June 27, 1952.

Rehearing Denied July 18, 1952.

Falls Independent School District, comprising many schools, hereinafter called District, and University Interscholastic League of Austin, Texas, hereinafter termed League.

The cause of action alleged damages and for permanent injunction against both defendants. The University sought to enjoin the League from interfering in carrying out provisions of a certain contract executed between it and the School District. It sought also to enforce specific performance of its contract with said School District for the use of Coyote Stadium, located in the City of Wichita Falls; said stadium being the property of the School District. The University desired to use said stadium to play, under its contract with appellee District, a classic football game therein on August 29, 1952, said game being well established in that vicinity and known as the Oil Bowl charity game.

The School District sought injunction against said League, enjoining it from enforcing against said District the following penalty provided by said League's Rule 34, to-wit:

"No athletic director, coach, teacher or administrator of a member-school shall at any time assist either directly or indirectly with the coaching, management, direction, selection of players, promotion, officiating, or allow public school facilities or equipment to be utilized in any all-star game (exception Texas High School Coaches Association game), in which one or more of the competing teams is composed of a player or players who, during the previous school year, were members of a high school football team. Any member high school violating the provisions of this all-star contest rule shall be subject to probation or suspension."

Hart, Brown & Sparks, Austin, for appellant.

Guy Rogers, Wichita Falls, for appellee Midwestern University.

Pierce & Gant, Wichita Falls, for appellee Wichita Falls Independent School Dist.

HALL, Chief Justice.

This suit was filed in the district court of Wichita County by Midwestern University, of the City of Wichita Falls, hereinafter termed University, against the Wichita

Trial was to the court which rendered the following judgment and granted the following injunction against the defendant League:

"It is therefore ordered, adjudged and decreed by the Court that the contract between Wichita Falls Junior College District and the Wichita Falls Independent School District dated April

10, 1947 as amended by agreement between Midwestern University and the Wichita Falls Independent School District dated May 19, 1950, is specifically enforced by this court and directed to be carried out according to its terms for the period therein covered.

"The court directs the issuance of a mandatory injunction in favor of Midwestern University against the Wichita Falls Independent School District that will require its carrying out such contract above identified, including the making available to Midwestern University the use of Coyote Stadium for August 29, 1952 and such other dates during the contract period as may be designated by Midwestern University, and all persons, firms, corporations and voluntary associations, including The University Interscholastic League, are permanently enjoined from in any way interfering with the performance of such contract or using its performance as a basis for sanctions against the Wichita Falls Independent School District or any of its member schools.

"It is further ordered, adjudged and decreed by the court that The University Interscholastic League is hereby enjoined from in any manner interfering with the performance of the above contract by the parties thereto, and further enjoined from in any manner inflicting sanctions upon the Wichita Falls Independent School District or from using explusion, suspension or probation of any of its public schools from membership in The University Interscholastic League, because of its performance in whole or in part of its contract with Midwestern University as specifically enforced above.

"It appearing to the court that Midwestern University sought the enforcement of a contract and that the Wichita Falls Independent School District was willing to carry out such contract but for the threatened application of the Wichita Falls Independent School District of Rule 34 of The University Interscholastic League, all costs in this behalf are hereby taxed against The University Interscholastic League for the collection of which let execution issue."

The defendant League, hereinafter called appellant, presents this appeal upon six points of error. They are, in substance, complaint against the trial court's judgment because (1) the contract between the School District and appellee, Midwestern University, does not specifically give Midwestern the right to use the stadium for any games except those played by its own school team; (2) the agreement between the League and the School District also constitutes a contract; (3) Midwestern University, not being a party to the contract between the League and School District, has no right to maintain suit to enjoin performance of that contract by the parties to it; (4) there is no evidence that appellee would suffer injury if the injunction is not granted; and (5) appellant League's Rule 34 prohibits the said School District to permit its stadium to be used in playing the all-star football game.

In 1946, one of appellee's predecessors, Hardin College, located in Wichita Falls, began the use of Coyote Stadium, owned by Wichita Falls Independent School District, under contract. In 1947, prior to the date when appellant passed its Rule 34, it entered into a ten year contract for the use of such stadium for an annual rental of $5,500, with the understanding that if they played more than six games, it was agreed they would pay $600 for each additional game played in Coyote Stadium. Paragraph (3) of said contract provides in part as follows: "Hardin College (predecessor of appellee) is to receive credit on the per cent paid by the concessionaire for all games played under its name at Coyote Stadium during each of the ten years * * *" etc.

The "Oil Bowl" all-star game for a number of years prior to the filing of this suit had been played for the benefit of charity, between graduates of high schools from all over Texas and Oklahoma; no high school students participated. This stadium, owned by the School District, is the only thing involved in the playing of this Oil Bowl game that in any way involves the District or any school situated therein. The facts show that a large portion of the best graduates,

coaches and football scouts in both states participate, either directly or indirectly in this game.

█ Regardless of the attitude which appellant has taken against the game's being played under the contract between appellee and the defendant School District, we feel the trial court did not err in rendering the above judgment and permanent injunctions against appellant. 24 Tex.Jur., pp. 16 and 41. The contract itself does not specifically say that games other than the six shall be played by the teams of appellee, yet there are words in effect in the contract, such as quoted in paragraph (3), which may be construed to mean that appellee could sponsor as many games in the stadium as it cared to pay for, provided the schedule of such games did not interfere with the use of such stadium by its owner.

D. L. Ligon, Assistant to the President of Midwestern University, testified, among other things, as follows: "Q. But, do you know whether or not the University has endeavored to sponsor this Oil Bowl Charity Game for August the 29th, 1952? A. Yes, sir. I am under that impression, yes."

We believe the League's rule 34 is ineffective to the subject matter of this case, to-wit, use of property belonging to public schools of this state. From the argument in appellee's brief, it is readily seen that it is more concerned about the appellant's undertaking to restrict the use of its property than it is as to whether or not the Oil Bowl charity game should be played in its stadium. It points out that under Article 2780, R.C.S., its trustees shall have the exclusive power to manage and govern the schools of said district and that title to its property involved is vested in its board of trustees and not in the principals, coaches, superintendents and other employees of said school. That such exclusive rights and authority vested in school trustees have been sanctioned by the courts of this state in the case of Southwestern Broadcasting Co. v. Oil Center Broadcasting Co., Tex.Civ.App., 210 S.W.2d 230, wherein the court specifically announces that independent school districts are not only quasi municipal corporations but are also a part of our state government.

It has been pointed out by all parties that the League is a voluntary organization not sanctioned by statute. The testimony in this case reflects that its functions are so valuable to the athletic society of our public schools that most all of the public schools of this state who participate in competitive athletics have become members. Its functions are so entwined with the functions of our public school system that it is considered a part thereof; especially is this true in view of the fact that its membership is made up from and of said schools. The testimony further shows that it is imperative for a public school of this state to belong to this organization if it expects to participate in competitive athletics with other public school districts.

The situation places appellee School District in a dilemma as described in its brief, thus:

"If the trustees carry out their public duty to maintain competitive athletics and join the 'Interscholastic League Football Plan',—their discretion to control the use of their public school property is restricted.

"If they exercise their lawful rights of control over their public properties, even by honoring possible previous contractual commitments,—then the Interscholastic League (exclusively dominant in High School Athletics) will deprive their public charges (students) the privilege of competitive athletics."

██ We find that the League is without authority to enforce restrictions provided in its rule 34. The duties of an athletic director, coach, teacher or administrator of a public school in this state can only be regulated by the officers of the school system of the state in accordance with the provisions of statutes pertaining to this subject. If appellant's motive in striving to stamp out all-star football games, such as the one under discussion here, is for the best benefit of the school, same may be controlled by statute.

Finding no error, judgment of the trial court and its order of permanent injunction are sustained.