

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

July 25, 1997

The Honorable Paul L. Sadler
Chair, House Committee on Public Education
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-446

Re: Whether University Interscholastic League rules concerning part-time athletic coaches exceed the League's authority (RQ-930)

Dear Representative Sadler:

You inquire about the validity of certain rules adopted by the University Interscholastic League (the "UIL"). You are concerned that UIL rules applicable to coaches may encroach on the authority granted local school boards by the Education Code provisions adopted in 1995 by Senate Bill 1.[1]

The UIL is a voluntary nonprofit association of Texas public schools,[2] which serves as the statewide organization for interschool competition in academics, music, and athletics.[3] It was created by the University of Texas at Austin in 1909 and was operated from the Division of Continuing Education for many years.[4] Legislation was adopted in 1984[5] recognizing it as a part of the University of Texas at Austin.[6] The UIL is not a state agency for purposes of provisions excusing state agencies from filing security for costs,[7] although its role in supervising various public

---

[1]Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2347-48 (Senate Bill 1 reenacted and revised Educ. Code tits. 1, 2).

[2]*Sullivan v. University Interscholastic League*, 616 S.W.2d 170, 172 (Tex. 1981); *University Interscholastic League v. Maroney*, 681 S.W.2d 285 (Tex. App.--Austin 1984, writ ref'd).

[3]TEX. EDUC. AGENCY, COMPREHENSIVE REVIEW OF THE RULES, BYLAWS, AND PROCEDURES OF THE UNIVERSITY INTERSCHOLASTIC LEAGUE 1 (Feb. 1991) (review mandated by Act of May 29, 1989, 71st Leg., R.S., ch. 813, § 5.03, 1989 Tex. Gen. Laws 3678, 3711); *see also Constitution and Contest Rules of the University Interscholastic League 1996-97*, § 1, at 19 (87th ed.).

[4]TEX. EDUC. AGENCY, *supra* note 3.

[5]Act of June 30, 1984, 68th Leg., 2d C.S., ch. 28, art. IV, part. F, 1984 Tex. Gen. Laws 117, 168.

[6]Educ. Code § 33.083(b); *see also Constitution, supra* note 3, § 20, at 21.

[7]*Maroney*, 681 S.W.2d at 287; *cf. Saenz v. University Interscholastic League*, 487 F.2d 1026 (5th Cir. 1973) (upholding trial court's finding that UIL is, despite its unorthodox structure, agency of State of Texas).

school activities caused some of its functions to be treated as state action for purposes of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.[8]

The UIL Constitution provides that its director is a university employee appointed by the university president.[9] Public school districts and open enrollment charter schools are eligible for membership in the UIL.[10] School districts that belong to the UIL must "comply with applicable state law, Texas Education Agency regulations and the terms of participation in League contests as set out in the *Constitution and Contest Rules*."[11]

The rules of the UIL are adopted by its legislative council, a twenty-eight member body consisting of twenty school administrators elected by the superintendents of the participant school districts and eight members appointed for four year terms by the chair of the legislative council.[12] Thus, UIL rules are made by a council that represents member school districts. The Education Code requires that rules and procedures of an organization conducting interscholastic competition be consistent with State Board of Education rules[13] and that the UIL submit its rules and procedures to the State Board of Education for approval, disapproval, or modification.[14] A statutorily established advisory council is required to review the rules of the UIL and make recommendations regarding them to the governor, the legislature, the legislative council of the UIL and the State Board of Education.[15] If any provision of the UIL Constitution or rules is inconsistent with state law, the state law prevails.[16]

You are concerned about section 1202 of the *Contest Rules*, which provides that "[a] school is not eligible for UIL competition in an athletic activity whose head coach or whose assistant high school coaches are not full-time employees of the school board of the school which the team

---

[8]*Blue v. University Interscholastic League*, 503 F. Supp. 1030, 1034 (N.D. Tex. 1980); *Sullivan*, 616 S.W.2d at 172.

[9]*See Constitution, supra* note 3, § 21, at 22.

[10]*Id.* § 10.

[11]*Id.* §§ 11, 52, at 22, 31-32.

[12]*Id.* § 25, at 23-24; Brief (ID# 39505) from Director of University Interscholastic League 2 (Apr. 8, 1997) (on file with this office) [hereinafter Brief].

[13]Educ. Code § 33.083(a).

[14]*Id.* § 33.083(b); *see also id.* § 7.102(28).

[15]*Id.* § 33.084.

[16]*Constitution, supra* note 3, § 306(d), at 34; Attorney General Opinion MW-43 (1979).

represents."[17] The rule defines "full-time" to mean that the person is under contract to the school board for the entire scholastic or calendar year and has enough contractual duties to be considered a full-time employee by the Teacher Retirement System and state law.[18] There are exceptions allowing retired teachers/coaches and student teachers to serve as assistant coaches.[19] In connection with this regulation, you ask the following questions about part-time employees:

> 1. Does a local school board have the authority to hire part-time employees, except as specified in the code?
>
> 2. Can a coach of a competitive event (not just athletic, but any interscholastic competitive event) be a part-time employee?
>
> 3. Does the University Interscholastic League have the authority to prohibit competition by educational institutions supported by state tax funds which have appointed part-time employees to coaching positions?
>
> 4. Does the University Interscholastic League or State Board of Education have the rule-making authority to interfere with an employment contract between any class of employee and a local school board?

In *University Interscholastic League v. Midwestern University*, 255 S.W.2d 177 (Tex. 1953), the Texas Supreme Court addressed similar questions about a UIL rule. Midwestern University sued Wichita Falls Independent School District and the UIL for specific performance of a contract that authorized the college to use the school districts' stadium for its football games. The college wished to hold an all-star game in the stadium, but the school district, as a member of the UIL, was subject to rule 34, which prohibited member schools from using public school facilities for all-star games. After determining that the contract did not apply to the all-star game, the supreme court addressed questions relevant to the district's membership in the UIL. On this matter, the court of civil appeals had stated as follows:

> It has been pointed out by all parties that the League is a voluntary organization not sanctioned by statute. The testimony in this case reflects that its functions are so valuable to the athletic society of our public schools that most all of the public schools of this state who participate in competitive

---

[17]*Id.* § 1202(a)(1), at 170. A brief from the UIL states that this rule was adopted to keep the activities educational rather than coached by someone with a "win at any cost" attitude, to guard the safety of the adolescent participants, and to provide equity among the smallest to largest, and poorest to wealthiest of the high schools that participate in UIL athletic competitions. Brief at 2-3.

[18]*Id.* § 1202(a)(2), at 170.

[19]*Id.* § 1202(a)(3), at 170.

athletics have become members. . . . The testimony further shows that it is imperative for a public school of this state to belong to this organization if it expects to participate in competitive athletics with other public school districts.[20]

The court of civil appeals agreed with the school district that rule 34 placed it in a dilemma, by compelling it to choose between carrying out its public duty to maintain competitive athletics and exercising its authority to control school district property, and held that the rule could not be enforced against the district. It stated as follows:

> The duties of an athletic director, coach, teacher or administrator of a public school in this state can only be regulated by the officers of the school system of the state in accordance with the provisions of statutes pertaining to this subject. If appellant's motive in striving to stamp out all-star football games, such as the one under discussion here, is for the best benefit of the school, same may be controlled by statute.[21]

The supreme court disagreed with these views of the court of civil appeals and reversed its judgment, holding that the restriction imposed by rule 34 was valid and that enforcement of the rule could not be enjoined. It pointed out that the school district was subject to direct statutory control by the legislature, but that the legislature had also delegated to the local trustees authority to resolve "all the minute problems inevitably arising in the operation and management of public schools."[22] Thus, the school trustees had the discretionary authority to decide how the district's stadium should be used. The supreme court then concluded that the trustees' action in taking membership in the UIL and agreeing to abide by its rules did not interfere with the performance of their duties to the public.[23] The district superintendent had testified that the advantages of belonging to the UIL were so great "that he deemed it his *duty and obligation*" to provide those advantages to his students,[24] and the court noted that these advantages existed despite rule 34. Because of the overwhelming advantages of belonging to the UIL, "it simply cannot be plausibly maintained that its membership and consequent agreement to abide by Rule 34 interfered with the performance of the duties owed by the District and its officers to the public."[25]

---

[20]*University Interscholastic League v. Midwestern Univ.*, 250 S.W.2d 587, 590 (Tex. Civ. App.--Fort Worth 1952), *rev'd*, 255 S.W.2d 177 (Tex. 1953).

[21]*Id.*

[22]*Midwestern*, 255 S.W.2d at 183.

[23]*Id.*

[24]*Id.* at 184 (emphasis in original).

[25]*Id.* The Supreme Court of Kansas addressed the rule-making authority of an organization similar to the UIL

(continued...)

It is well established that the courts will not interfere with school trustees in the exercise of their broad powers of control and management unless a clear abuse of power and discretion is shown.[26] The Texas Supreme Court opinion in *Midwestern* applies this policy, even though it does not expressly recite it, by treating the school board's decision to join the UIL and to be subject to UIL rules as a matter for the exercise of the board's reasonable discretion to manage the district and its property. The board could reasonably choose the advantages of UIL membership over the fee it would receive for allowing Midwestern to hold an all-state game in the district stadium.[27]

Thus, a school board has discretionary authority to join the UIL and agree to comply with its rules on part-time coaches, unless constitutional or statutory provisions bar the school district from agreeing to comply with those rules. The board of trustees of each independent school district is required to adopt a policy providing for the employment and duties of district personnel, which may specify the terms of employment with the district or authorize the superintendent to determine the terms of employment with the district.[28] We find no provision expressly addressing the district's employment of part-time personnel, nor have you pointed out such a provision. In the absence of a statute that controls the school board's decisions about part-time employment, it has authority, in the exercise of reasonable discretion, to make such decisions itself. Accordingly, a school board has authority to decide not to hire part-time athletic coaches in order to comply with UIL rules making the school district eligible for athletic competition, its decision being subject to review for abuse of discretion.

You next ask whether a coach of a competitive event, not restricted to athletic competitions, but including any interscholastic competitive event, may be a part-time employee. We have already concluded that a school board, if it wishes to belong to the UIL, may comply with UIL rule 1202, which denies eligibility for athletic competitions to school districts whose head coach or assistant high school coaches are not full-time employees of the school board. Rule 1202 applies only to competition in an athletic activity. Another rule provides that "[d]irectors in the one-act play contest

---

[25](...continued)
in *Robinson v. Kansas State High School Activities Association, Inc.*, 917 P.2d 836, 843 (Kan. 1996). The Kansas State High School Activities Association ("KSHSAA"), like the UIL, is a voluntary association. "Nothing compels a high school to join KSHSAA or refrain from withdrawing its membership, if the school is willing to accept the consequences, however unpalatable. Schools are not required to have an interscholastic athletic program." *Id.* at 843.

[26]*Citizens for Better Educ. v. Goose Creek Consol. Indep. Sch. Dist.*, 719 S.W.2d 350 (Tex. Civ. App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.), *appeal dism'd*, 484 U.S. 804 (1987).

[27]It is not unusual for a school board to decide to accept certain limits on its discretion to control the school district in exchange for specific benefits. For example, in *Midwestern*, 255 S.W.2d 177, the Wichita Falls' school board decided to enter into a contract whereby Midwestern paid the district a fee to use its stadium for its football games, with the result that the school district could not use the stadium at the times Midwestern was authorized to use it.

[28]Educ. Code § 11.163.

must be full-time employees of the school districts of the schools which the plays represent."[29] UIL states that this rule was adopted because public schools located near university or college drama departments hired college drama coaches part-time for the one-act play contest, thus giving those schools an unfair competitive advantage.[30] A school district that wishes to participate in the UIL one-act play contest may comply with this rule, just as it may comply with the rule requiring athletic coaches to be full-time employees.

You phrase your third and fourth questions in terms of whether the UIL has certain authority over the employment decisions of member school districts. As we have shown in answer to your first question, a school board, in the exercise of its reasonable discretion, may decide to join the UIL and agree to comply with its rules in order to secure for its students the opportunity to engage in UIL sponsored competitions.

You also inquire about contest rules that limit the off-season activities of coaches. For example, coaches must adhere to in-season and out-of-season practice regulations,[31] and, with certain exceptions, school coaches may not coach students from their own attendance zone on a nonschool team during the off-season.[32] You ask the following question:

> In light of the massive transfer of power [by Senate Bill 1] from the Texas Education Agency and the State Board of Education, does the University Interscholastic League have the rule-making authority to restrict a school employee's activity outside the classroom and off the playing field?

You also ask whether "the power to restrict the school employee and the activity of the student reside[s] with the local school board." We will address these questions in the context of a school district's participation in the UIL.

Senate Bill 1 of the Seventy-fourth Legislature, which rewrote titles 1 and 2 of the Education Code, greatly restricted the functions to be performed by the Texas Education Agency.[33] Section 7.003 of the Education Code, adopted by Senate Bill 1, provides that "[a]n educational function not specifically delegated to the agency or the board under this code is reserved to and shall be

---

[29]*Constitution, supra* note 3, § 1033(5)(A), at 119-20.

[30]Brief at 3.

[31]*Constitution, supra* note 3, § 1201(b)(5), at 170; *see also id.* § 1206(a)(2) (rules applicable during school and intersessions).

[32]*Id.* § 1209(f)(1), at 183.

[33]Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2207; *see* Fiscal Note, S.B. 1, 74th Leg., R.S. (1995).

performed by school districts or open-enrollment charter schools." It has been suggested that this language undermines the authority of the UIL to regulate competition among its member school districts. We do not believe that section 7.003 of the Education Code has this effect. As the supreme court of Texas found in *Midwestern*, the decision to participate in the UIL was a function of the local school board long before section 7.003 of the Education Code was adopted.

Senate Bill 1 moreover, reenacted the provisions that expressly recognize and regulate the UIL, with amendments. It invalidated certain UIL rules limiting student eligibility for competitions, by providing that participation rules would apply "only when the student is under the direct supervision of an employee of the school or district in which the student is enrolled or at any other time specified by resolution of the board of trustees of the district."[34] It also provided that "[e]ach rule of the University Interscholastic League adopted before September 1, 1995 expires August 31, 1996, unless readopted by the league and approved by the State Board of Education after September 1, 1995."[35] The rules have been readopted and approved, as required by this provision.[36]

Thus, while Senate Bill 1 expressly invalidated certain UIL requirements, the bill also expressly provided for the readoption of the remaining rules by the UIL and the State Board of Education. The text of Senate Bill 1 reflects the legislature's intent to permit the UIL to continue enforcing its existing rules except where expressly invalidated. We find no basis for concluding that rule 1202 is inconsistent with Senate Bill 1. As we have already noted, an express statute or constitutional provision may bar a school board from agreeing to comply with a particular UIL regulation, but in the absence of such contrary legislation, the decision to join the UIL and comply with its rules is a matter for the exercise of the school board's reasonable discretion.

Your last question is as follows:

> What equity issues are created when the University Interscholastic League proposes and the State Board of Education approves a rule which applies to a small number of public education employees?

The requestor's concern relates to the students who participate in an extracurricular activity coached by a part-time employee of the school district and who are therefore disqualified from participating in UIL-sponsored competitions. We will address the interests of students in participating in UIL activities, rather than the interests of persons who coach these activities in working as part-time employees of the school district.

---

[34]Educ. Code § 33.081(b); *see Constitution and Contest Rules of the University Interscholastic League 1995-96*, Appendix V: Rules Deleted By Enactment of Senate Bill One (86th ed.).

[35]Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2348.

[36]Brief at 4.

Students do not possess a constitutionally protected interest in their participation in extracurricular activities.[37] Participation in such activities is not a property right for purposes of due process, nor is it a fundamental right under the equal protection clause.[38] Rule 1202 of the UIL, which creates two classes of students based on the full-time or part-time employment of their athletic coaches, does not infringe upon fundamental rights or burden a suspect class. Thus, equal protection analysis would require the classifications created by this rule to be rationally related to a legitimate state interest.[39] Whether a particular rule, including rule 1202, is rationally related to a legitimate state purpose must be answered on a case by case basis, in light of all relevant facts.[40] Accordingly, this question cannot be resolved in the opinion process.

We have already mentioned that Senate Bill 1 of the Seventy-fourth Legislature included provisions that expressly invalidated certain UIL rules. The legislature clearly has authority to repeal rule 1202 if it wishes to do so.

---

[37]*Spring Branch I.S.D. v. Stamos*, 695 S.W.2d 556 (Tex.), *appeal dism'd*, 475 U.S. 1001 (1986).

[38]*Niles v. University Interscholastic League*, 715 F.2d 1027 (5th Cir. 1983), *cert. denied*, 465 U.S. 1028 (1984) (rule requiring high school student to reside in district for at least one year prior to participating in interscholastic events did not violate equal protection clause); *Blue v. University Interscholastic League*, 503 F. Supp. 1030, 1035 (N.D. Tex. 1980); *Stamos*, 695 S.W.2d at 561-62.

[39]*Sullivan*, 616 S.W.2d at 172 (Tex. 1981) (finding unconstitutional UIL rule restricting transfer students' participation in certain sports at new school, because not rationally related to purpose of preventing recruiting); *see University Interscholastic League v. North Dallas Chamber of Commerce Soccer Ass'n*, 693 S.W.2d 513 (Tex. App.-- Dallas 1985, no writ) (UIL rule restricting club soccer activities of varsity school athletes did not violate equal protection clause).

[40]Section 1200 of the UIL rules states that one purpose of the athletic program is "to devise and prepare eligibility rules that will equalize and stimulate wholesome competition between schools of similar size." *Constitution, supra* note 3, § 1200(a), at 170.

## S U M M A R Y

The University Interscholastic League ("UIL") is a voluntary nonprofit association of Texas public schools, which serves as the statewide organization for interschool competition in academics, music, and athletics. A school board has discretionary authority to join the UIL and to agree to comply with its rules, unless constitutional or statutory provisions bar the school district from agreeing to a particular rule. A school board may agree to comply with a UIL rule that makes a school district ineligible for competition in an athletic activity if its coach is not a full-time employee of the school district.

A public school student's interest in participating in extracurricular activities is not a property right for purposes of due process, nor is it a fundamental right under the equal protection clause. Classifications created by rules of the UIL must be rationally related to a legitimate state purpose. Whether a particular rule is rationally related to a legitimate state purpose cannot be resolved in the opinion process.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General